PEOPLE v. GISONDI.

1. CONSPIRACY—EVIDENCE—POSTCONSPIRACY DECLARATION.
   A postconspiracy declaration by a conspirator is admissible as proof of guilt of the declarant only, as the conspiracy had come to an end before its making.

2. CRIMINAL LAW—CONFESSION OF CODEFENDANT.
   Confession of a codefendant, made at the police station in the presence of defendant-appellant, *held*, not admissible as evidence of appellant's guilt, where latter declined to respond except to state his attorney had told him to stand mute.

3. SAME—ADMISSION—SILENCE.
   Silence of accused, in face of an accusation, is not deemed an admission or confession in a criminal case, unless the silence is of a suspected participant in a crime as a part of the *res gestae*.

4. SAME—SILENCE.
   Statements of a person in custody may be used in evidence against him, but his silence may not.

5. SAME—INFERENCE FROM FAILURE TO TESTIFY.
   No inference unfavorable to a defendant may be drawn from his failure to testify in a criminal case (Const 1908, art 2, § 16).

6. HOMICIDE—CONFESSION OF CODEFENDANT—EVIDENCE—MISCARRIAGE OF JUSTICE.
   Admission into evidence, in prosecution for murder committed in course of attempted robbery, of confession of one defendant

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Conspiracy §§ 35, 40.
    Admissibility as against conspirator of extrajudicial declarations of coconspirator—Supreme Court cases. 1 L ed 2d 1780.
[2] 29 Am Jur 2d, Evidence § 539.
[3, 4] 29 Am Jur 2d, Evidence § 525.
[5] 29 Am Jur 2d, Evidence § 189.
[6] 29 Am Jur 2d, Evidence §§ 525, 539.

at police station in presence of defendant-appellant, *held*, reversible error resulting in a miscarriage of justice, where sole response of the appellant was that his attorney had told him to stand mute (CL 1948, § 750.316).

Appeal from Oakland; Holland (H. Russel), J. Submitted Division 2 June 8, 1967, at Lansing. (Docket No. 2,576.) Decided December 8, 1967.

Michael Gisondi was convicted of first-degree murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *S. Jerome Bronson,* Prosecuting Attorney, and *Robert W. Leutheuser,* Chief Appellate Counsel, for the people.

*Condit, Denison, Devine, Porter & Bartush,* for defendant on appeal.

BAUM, J. This is a delayed appeal, upon leave granted, to review one issue:

"Did the trial court commit reversible error in admitting into evidence the confession of a codefendant, which was made in the presence of defendant Gisondi, as evidence of defendant Gisondi's guilt?"

Harold Hummel and Michael Gisondi were convicted of first-degree murder[1] by a jury in the Oakland county circuit court. It was the theory of the people that Hummel shot and killed two persons in the course of an attempted robbery in which the appellant Michael Gisondi was a participant.

The confession in question was made in the Hazel Park police station in the presence of five police officers pursuant to a prearranged plan. The officers

---

[1] CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).

brought about a face-to-face meeting between Hummel and Gisondi. This occurred a short time before the defendants were scheduled to be arraigned in the Hazel Park justice court.

The officers already had a number of confessions from Hummel, oral and written, including a formal statement made before the prosecuting attorney. Some of these statements implicated Gisondi, but were not admissible in evidence against him because they were made outside Gisondi's presence. Moreover, Gisondi, himself, had steadfastly denied involvement. The officers were in need of evidence against him. They arranged the confrontation between Hummel and Gisondi for only one purpose: to elicit an incriminating response from Gisondi.

Hummel's confessions were prompted by his mistaken belief that Gisondi had "squealed" on him. One of the officers had so informed Hummel. In fact, Gisondi had not "squealed." The officer gave this false information to Hummel, as an artifice, to obtain a confession. The artifice was successful.

At the Hazel Park police station, in Gisondi's presence, one of the police officers asked Hummel: "Is that the man who was with you on the holdup and shooting?" Hummel answered, "Yes." The officer asked Hummel whether both he and Gisondi had guns. Hummel answered, "Yes; Gisondi had a .22 pistol, he kept it in his pocket."

Another officer asked Hummel, "Was Michael in the tavern with you when you fired the first shot?" The answer was, "Yes, I told him to get out."

Hummel went on to relate that after the shooting Gisondi drove the getaway car.

After eliciting these responses from Hummel, an officer asked Gisondi, "Is that right? Is Hummel telling the truth?"

Gisondi answered, "My attorney told me to stand mute."

The episode at the police station was related in evidence at trial by several police officers. Each time, there was an objection to the admission of such evidence against Gisondi.

The events at the police station took place approximately one month after the homicides and 12 days after Hummel and Gisondi were arrested. Hummel's police station confession was not, therefore, a statement or admission by a conspirator made in the course of a conspiracy, so as to be binding upon his coconspirator.[2] Nor was Hummel's accusation of Gisondi admitted into evidence on such a theory.

Hummel's extrajudicial implication of Gisondi apparently was received in evidence on the theory that it was made in the presence of Gisondi and that Gisondi's silence in the face of the accusation amounted to an admission by Gisondi, allowable in evidence against him under an exception to the hearsay rule.

Despite Gisondi's motion for a separate trial, he and Hummel were tried together. Hummel's self-implicating declaration would have been admissible in evidence against Hummel alone.[3] However, evidence of it was not confined by the trial judge to use against Hummel. Over strenuous objections, Hummel's police station statement was received as substantive evidence of Gisondi's guilt.

At the trial, Hummel repudiated his out-of-court implication of Gisondi. On the witness stand, Hummel admitted the attempted stickup and shootings, but testified that he did "the job" alone, without any participation whatsoever by Gisondi. Hummel testified that his extrajudicial implication of Gisondi was an invention inspired by anger against Gisondi—

---

[2] *People* v. *Chambers* (1937), 279 Mich 73, 79; *People* v. *Trilck* (1965), 374 Mich 118.

[3] 2 Wharton's Criminal Evidence (12th ed), § 417, p 186: *Lutwak* v. *United States* (1953), 344 US 604, 618, 619 (73 S Ct 481, 489, 490, 97 L ed 593, 603, 604).

made out of whole cloth, resulting from his belief that Gisondi had informed on him.

We turn now to the theory that Gisondi's silence in the face of an accusation was an admission, allowable in evidence under an exception to the hearsay rule. A serious question can be raised as to whether Gisondi was really silent in the face of an accusation. His lawyer had instructed him, with a view to the arraignment, that he was to stand mute. To stand mute is a defensive posture in criminal proceedings which admits nothing. Gisondi may have thought that he was admitting nothing by saying, "My lawyer told me to stand mute."

Silence in the face of an accusation is received in evidence under certain circumstances on the theory that such silence indicates acquiescence in the accusation. But here, there is a serious question whether Gisondi intended any such acquiescence by his statement.

The dubious characterization of Gisondi's conduct as an admission is not the pivotal issue. The outcome of this case would be the same even if we were dealing with a true case of admissive silence in the face of an accusation.

This case was tried in 1953. Under *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L ed 2d 882), the appellant cannot claim the benefit of the decisions of the United States Supreme Court in *Escobedo* and *Miranda*[4] as precedents, retroactively binding upon this Court. Nevertheless, under long standing Michigan precedents, which antedate *Escobedo* and *Miranda,* the accused's silence in face of an accusation is not deemed an admission or confession in a criminal case (*People* v. *Bigge* [1939], 288 Mich 417), except when such silence occurs on

[4] *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L ed 2d 977); *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L ed 2d 694).

the part of a suspected participant in a crime as a part of the *res gestae* (*People* v. *Todaro* [1931], 253 Mich 367).

The reason for the *Bigge* rule is clear. Without it, the constitutional privilege against self-incrimination[5] would be vitiated. The privilege gives a man under arrest the right, with impunity, to be silent in face of an accusation.[6] While, under certain circumstances, the statements of a person in custody may be used in evidence against him, his silence may not.[7] This is a corollary of the age-old Michigan rule,[8] now made applicable by the United States Supreme Court to all states via the Fourteenth Amendment, that no inference unfavorable to the defendant may be drawn from his failure to testify in a criminal case.[9]

Without the *Bigge* rule, a man under arrest could be accused and forced to reply on the pain of silence being used as proof of guilt. If he replied to the accusation, his reply might also be used in evidence against him. This would make a mockery of the privilege against self-incrimination.

Hummel's extrajudicial statement was admitted into evidence in violation of Gisondi's constitutional right not to be a witness against himself.

Hummel's police station statement was the most significant and damaging piece of evidence against Gisondi. It must have influenced the jury. Its admission into evidence was prejudicial error which resulted in a miscarriage of justice. CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096).

---

[5] Const 1908, art 2, § 16, in effect when Gisondi·was tried, provided that "No person shall be compelled in any criminal case to be a witness against himself."

[6] *Yep* v. *United States* (CA 10, 1936), 83 F2d 41.

[7] *McCarthy* v. *United States* (CA 6, 1928), 25 F2d 298.

[8] *Knowles* v. *People* (1867), 15 Mich 408, 413; *Carne* v. *Litchfield* (1852), 2 Mich 340, 344.

[9] *Griffin* v. *California* (1965), 380 US 609 (85 S Ct 1229, 14 L ed 2d 106).

We are constrained to hold that the trial judge erred in denying the appellant's motion for a new trial. The ruling is reversed and the case remanded for a new trial.

LESINSKI, C. J., and QUINN, J., concurred.