PEOPLE *v.* FREDERICKS

1. CRIMINAL LAW—DEFENSES—INSANITY—PSYCHIATRIC EXAMINATION.

The trial court has the inherent right to order that a defendant submit to a psychiatric examination and such an examination does not *per se* violate the defendant's constitutional right against self-incrimination.

2. CRIMINAL LAW—PSYCHIATRIC EXAMINATION—PSYCHIATRIST'S TESTIMONY—PRIVILEGE AGAINST SELF-INCRIMINATION.

Defendant's privilege against self-incrimination was not violated

where the trial court, having ordered the defendant to submit to a psychiatric examination, permitted the psychiatrist to testify concerning the defendant's sanity.

3. CRIMINAL LAW — PRIVILEGE AGAINST SELF-INCRIMINATION — SILENCE.

Permitting three witnesses to testify that on three occasions the defendant had nothing or nothing further to say after being warned of his constitutional rights did not constitute reversible error where the defendant testified freely concerning ihs participation and his version of the crime charged.

Appeal from Oakland, Frederick C. Ziem, J. Submitted Division 2 August 30, 1971, at Lansing. (Docket No. 11544.) Decided October 26, 1971. Leave to appeal granted, 387 Mich 755.

Gene Wallace Fredericks was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *Dennis Donohue,* Chief Appellate Counsel, for the people.

*Fenton, Nederlander, Tracy, Dodge & Barris, P. C.,* for defendant on appeal.

Before: DANHOF, P. J., and McGREGOR and QUINN, JJ.

QUINN, J. August 5, 1970, a jury found defendant guilty of first-degree murder, MCLA 1971 Cum Supp § 750.316 (Stat Ann 1971 Cum Supp § 28.548). He was sentenced; his motion for new trial was denied, and he appeals.

We have examined each of the alleged errors hereinafter discussed in context with the record, briefs, and oral arguments. We affirm.

It is conceded that defendant shot and killed Neil Churchill in the early morning of June 3, 1970. At one time, defendant and decedent were in business together, and they and their wives went together socially. In 1968, Churchill and defendant's wife began having an affair. This became known to defendant; it led to marital difficulties between defendant and his wife which ultimately resulted in the wife filing for divorce. Subsequently, it appeared that the marriage could be saved, and then on the night of June 2, 1970, defendant's wife acknowledged to him that she could not give up Churchill.

Upset by this turn of events, defendant drove around in his car for awhile and then decided that he should talk to Churchill. Defendant drove to the rear of Churchill's place of business and found the latter preparing to depart therefrom. As to the ensuing events, defendant testified:

"I got out of my car, and I had my pistol on me, as I always did. And I had it in my belt. And as I was getting out of the car, as you get out of the car, and you have a pistol, you, by habit, make sure it doesn't fall. And as I got out of the car, and I hollered at him, 'Churchill, I've got to talk to you.' And he whirled around and he said 'You son-of-a-bitch.' He had his arm up in the air like this, lunging forward, and he had a gun in his hand. And the next thing I heard a gun go off and I didn't know whose gun had gone off. And I had saw him fall forward. And I hollered, 'Neil, Neil,' and I ran over to him. And I looked down at him. I could hear him breathing, but I could see blood."

Defendant called the police and requested an ambulance for a man who had been shot. Defendant surrendered voluntarily to the police. Defendant

knew Churchill carried a gun and Churchill knew defendant carried one also. The defense was self-defense and temporary insanity.

With respect to the instructions on self-defense, defendant contends that a portion thereof places the burden of proof on him, and that a portion thereof led the jury to believe that self-defense would only lie in the event of an actual, rather than apparent assault. By the usual method of selecting portions of the instructions which support his position, defendant supports these contentions. The invalidity of defendant's position is best demonstrated by quoting the entire instruction on self-defense:

"Now, concerning self-defense, an aggressor is not necessarily a person who may strike the first blow in a personal encounter, or make the first demonstration indicating an intent to strike; but, if a defendant with malice and hatred in his heart towards another person, seeks to provoke a difficulty, either by acts or words, with the intent to induce such other person to strike the first blow, or to make the demonstration, in order to form a pretext to take his life, then the defendant could not avail himself of the right of self-defense.

"If the defendant was the aggressor in the conflict, he cannot invoke the doctrine of self-defense as an excuse for the killing, unless he was, at that time, in immediate danger of losing his own life or suffering some grievous bodily injury and there was no retreat open for him and his only safety lay in shooting.

"Self-defense, in proper cases, is the right of every person but it will not justify the taking of human life, unless the jurors shall be satisfied from the testimony; first, that the defendant was not the aggressor in bringing on the difficulty, that is, he was without fault. Second, that there existed, at the time of the shooting, in his mind, a present and im-

pending necessity to shoot in order to save himself from death or some great bodily harm. And, third, that there must have been no way open whereby he could have retreated, as it appeared to him at the time of the shooting, to a place of safety and have thus avoided the conflict.

"Unless you find all three of these facts are established in this case, then the plea of self-defense fails.

"The burden of proof of all such matters is upon the people to show that the respondent is guilty beyond a reasonable doubt of the offense charged, and the people's testimony must be such as to satisfy the jurors that the killing was not done in self-defense.

"The burden is not on the defendant who makes the defense of self-defense to satisfy the jury of the truth of his claim.

"The defense of self-defense is one which is frequently made in homicide cases, and one which the defendant has a right to use. But it should be carefully scrutinzed by the jury. And the evidence on this point should be carefully considered and weighed, for the reason that if the defendant acted in self-defense at the time of the alleged killing, he ought not to be punished for the act.

"The evidence on this question ought to be carefully considered for another reason, and that is that due regard for the ends of justice and the peace and welfare of society demands it, to the end that parties charged with crime may not make use of the plea of self-defense as a means to defeat the ends of justice, and as a shield to protect themselves from criminal responsibility in case you find criminal responsibility exists.

"It is for you, members of the jury, to say whether this respondent was assault[ed] in the manner claimed. The law gives to every person the right to protect himself from unlawful assault.

"Where an assault is made, the right to resist exists; but the resistance must be in proportion to the danger which is apprehended. It is not every assault that would justify a person in resisting by using a deadly weapon. If, however, the person assailed honestly believes his life to be in danger, or, that he may suffer serious bodily harm, he has the right to resist even to taking the life of his assailant.

"The person assailed is to be judged by the circumstances and conditions as they honestly appeared to him at the time. The defense of self-defense necessarily assumes an assault. There can be no self-defense by a person until he is assailed by another. It is for you to say, from all the evidence in this cause, whether the respondent honestly believed he was in danger of losing his life or in danger of great bodily harm, and that it was necessary for him to fire this fatal shot in order to save himself from such apparent and threatened danger.

"If the testimony in this case creates in your mind a reasonable doubt as to whether or not the act was done in self-defense, the respondent is entitled to the benefit of the doubt, and it will be your duty to acquit him.

"It is not necessary to his defense that the danger should have been actual or real, or that the danger should have been impending and immediately about to follow. The actions and conduct of the respondent are to be judged from the circumstances as they reasonably and honestly appeared to him at the time.

"One who is suddenly attacked by an adversary is not held to fine distinctions of judgment as to what is in the mind of his adversary, or, what his adversary is about to do, or to how much force it is necessary for him to use to protect his life or his person from serious bodily harm.

"In defending himself against the unlawful attack of another, a man is justified in resorting to such violence and the use of such force as the particular

circumstances of the case may require for his protection.

"Now, the degree of force to be employed in protecting one's person must be in proportion to the attack made, and must depend upon the circumstances in each particular case, and the imminence of danger as it appears to him at the time.

"The only purpose which justifies the employment of force against assault is to defend one's self; that is the object to be attained, and a man is only justified in using such an amount of force as may reasonably appear to him at the time to be necessary to accomplish that purpose.

"As soon as that object is attained, it is his duty to desist. If he uses a kind of force towards his assailant in excess, or, out of proportion to what may be reasonably necessary to his own defense, as it honestly appeared to him at that time, he himself is guilty of an assault.

"If you find that the defendant did use more force than was actually necessary for self-protection, but also find that he honestly believed at the time that he was using only so much force as was necessary for his own defense, and if he acted honestly and in good faith in coming to that conclusion, and if such a belief was reasonable on his part, under the circumstances surrounding him at that time, and the situation as it appeared to him, then you should find the defendant not guilty."

This instruction neither places the burden of proof on defendant, nor would it lead a jury to believe that self-defense was only available in the event of an actual assault. We find no error in this instruction on self-defense. This finding obviates discussion of defendant's contention that part of this instruction is erroneous and reversal is required under the doctrine of *People* v. *Eggleston* (1915), 186 Mich 510.

Defendant next contends that the trial court erred reversibly in ordering that defendant submit to a psychiatric examination, and further that his privilege against self-incrimination was violated when the psychiatrist testified. *People* v. *Sammy Martin* (1970), 26 Mich App 467, is *contra* and controls.

Over defendant's objection, three witnesses testified as to three occasions when defendant stated he had nothing (or nothing further) to say after being warned of his constitutional rights. Defendant contends this violated his right to remain silent. Assuming the error, it is not reversible error. Defendant testified fully as to his participation in and his version of the offense.

The remaining issues relating to alleged error in denying defendant's motion for new trial on the basis of newly discovered evidence and further alleged error in instructions are so insubstantial that discussion of them is not required.

Affirmed.

All concurred.