PEOPLE *v* JABLONSKI

PEOPLE *v* STOPONI

1. CRIMINAL LAW—PRIVILEGE AGAINST SELF-INCRIMINATION—SILENCE
   —EVIDENCE—ADMISSIBILITY.

   Testimony by investigating police officers that the defendants remained silent in the face of an accusation of the commission of a crime is inadmissible, over the objection of the defendants, because that testimony impermissibly penalizes the defendants for the exercise of their constitutional privilege against self-incrimination (US Const, Ams V, XIV).

2. CRIMINAL LAW—PRIVILEGE AGAINST SELF-INCRIMINATION—SILENCE
   —EVIDENCE—ADMISSIBILITY.

   Admitting the testimony of investigating police officers, over the defendants' objection in a prosecution for breaking and entering, that the defendants remained silent and failed to explain their possession of stolen property was reversible error where the testimony was not struck and no cautionary instruction was given, because of the high probability that the jury inferred from the fact that the defendants failed to explain their possession of the stolen property that the defendants had admitted that they stole it.

3. CRIMINAL LAW—PRIVILEGE AGAINST SELF-INCRIMINATION—SILENCE
   —EVIDENCE—ADMISSIBILITY.

   Testimony that defendant remained silent at the time of his arrest, after being advised of his constitutional rights, should be excluded from trial; where a timely objection is made to such testimony, the testimony should be struck, the jury should be instructed to disregard the testimony, and the court should prohibit the prosecutor from making any further reference to the defendant's exercise of his right to remain silent.

REFERENCE FOR POINTS IN HEADNOTES
[1-3] 29 Am Jur 2d, Evidence § 640.

Appeal from St. Clair, Halford I. Streeter, J. Submitted Division 2 December 8, 1971, at Lansing. (Docket Nos. 11192, 11193.) Decided January 21, 1972.

Walter Jablonski and Albert Stoponi were convicted of breaking and entering a building with intent to commit larceny. Defendants appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Walter W. Turton,* Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, for defendants.

Before: McGREGOR, P. J., and BRONSON and TARGONSKI,* JJ.

McGREGOR, P. J. Defendants were found guilty by a jury of the felony of breaking and entering a building with intent to commit a larceny; MCLA 750.110; MSA 28.305. Their convictions arose out of the breaking and entering of Bill's T V Store, in Marysville, Michigan. At trial, Louis O'Neill testified that he and his wife were awakened at about 4 a.m. by the sound of breaking glass. The O'Neill residence is located across the street from Bill's T V. Upon looking out their window, the O'Neills were able to observe a car parked next to the T V store, see that the front window of the store had been broken, and that the car parked next to the store was a light-colored convertible. The police were called.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

At trial, Dean Keith DeShon, the owner of the store, testified that the store had been locked and that no one had been given permission to enter. He testified also that he was able to determine what was missing by comparing the merchandise on the floor of the store against inventory sheets. The TV sets found in defendants' possession at the time of their arrest were marked. At trial, defense counsel moved to suppress the admission of these TV sets, the motion was denied, and the sets were admitted into evidence and were identified as being from the store. The captain of the Marysville Police Department testified that at about 4:30 a.m. on the day in question, he received a radio call on his car radio that there was a breaking and entering in progress at Bill's T V Store. Upon receiving this message and being advised that a convertible was involved, the captain proceeded to Gratiot Avenue by the quickest route, which caused him to be at a point southwest of the store where he observed a convertible driving on Gratiot; he radioed his partner that he had spotted a car similar to the suspected car, and proceeded to follow the car. The officer turned on his overhead light and the suspect car stopped. The police officer's partner arrived and the two officers searched the car; they found two TV sets in the back seat and the defendants were arrested. The men and the car were searched; a pair of gloves were found on the front seat and two prybars were found on the floor. The captain testified that his partner read the defendants their rights. He further testified that, at the time of their apprehension, the police officers talked to the defendants and they did not care to discuss anything about it. Counsel for the defendants objected and moved for a mistrial on the basis that such a statement amounted to adverse comment on the defendants' rights to remain silent.

The motion was denied.  Later, the other officer was permitted to testify, over defense objection, that the defendants were informed of their right to remain silent and that they then remained silent when asked if they wished to talk.

This Court is now asked whether reversible error resulted when the arresting officers were allowed to testify, over the objections of the defense, that the defendants had been informed of their right to remain silent, and had then made no response to the question of whether they had anything to say.

The prosecution may not use at trial the fact that a defendant exercised his privilege of silence in the face of accusation, for such would penalize the defendant for exercising the privilege.  *Miranda* v *Arizona,* 384 US 436, 468; 86 S Ct 1602, 1624; 16 L Ed 2d 694, 720; 10 ALR3d 974 (1966).

In *Griffin* v *California,* 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965), the prosecution commented in closing argument that the defendant failed to take the stand and testify as to his alibi; the Supreme Court held:

"Comment on the refusal to testify  *  *  *  is a penalty imposed by courts for exercising a constitutional privilege.  It cuts down on the privilege by making its assertion costly."

The Court then went on to hold that the Fifth Amendment, and its direct application to the Federal government and in its bearing on the states through the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.

A year later *Miranda* v *Arizona, supra,* applied *Griffin, supra,* to the interrogation stage.  In footnote 37 the Court says:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

Long before *Miranda,* the rule in Michigan was that the prosecutor could not comment on the failure of a defendant to make a statement in the face of an accusation. See *People* v *Bigge,* 288 Mich 417, 425 (1939). This Court, in *People* v *Gisondi,* 9 Mich App 289 (1967), held that statements of a person in custody may be used in evidence against him, but his silence may not.

The case of *State* v *Stuart,* 456 SW 2d 19 (Mo, 1970), while unique in the manner in which the testimony came before the jury, seems to be applicable to the instant case. In response to a question asked by one of the jurors, the police officer indicated that defendant remained silent after being informed of his rights. The Court held that, since the failure to volunteer an explanation is not admissible as an admission, the probability that the jury could have inferred that defendant, by his silence, admitted that the property was stolen by him was too great to allow the verdict to stand. The same could be said of the instant case. Since the defendants here were charged with breaking and entering, the probability that the jury inferred from the fact that they failed to explain their possession of the stolen property that they were admitting that they stole it, is just too great to say it was harmless error. This is amplified by the fact that the defense argues that there was no showing that defendants actually broke into the store. The defense contended that defendants were merely the transporters of the stolen goods.

This is not a case where the issue was not properly preserved by an objection at the trial court level, as in *People* v *Webb,* 13 Mich App 625 (1968); *People* v *Lamson,* 22 Mich App 365 (1970); *People* v *Thomas Martin,* 26 Mich App 359 (1970); and *People* v *Shugar,* 29 Mich App 139 (1970). Neither is this a case where the trial judge struck the testimony or admonished the jury not to consider the testimony, as in *People* v *Jew,* 21 Mich App 408 (1970); *People* v *Skidmore,* 28 Mich App 677 (1970).

In the instant case defense counsel vigorously objected to the testimony and continually renewed the objection; yet the trial court allowed the testimony to be given, did not strike the testimony, and did not admonish the jury.

The admission of such testimony obviously was error. The only question is whether or not it was harmless error. For the reasons set forth in *State* v *Stuart, supra,* it would not appear that it could be said that it was harmless error. Also, since the prosecutor failed to file a brief in opposition, the inevitable conclusion is that he agrees that reversible error was committed. *People* v *Walma,* 26 Mich App 326 (1970). It would appear that the better rule is that there is absolutely no probative value in eliciting that the defendants were informed of their rights unless the prosecutor intends to offer a confession or statement made by the defendants. Since there is a potential prejudicial effect even from the mere mention of the rights statement, even in the absence of testimony that the defendant wished to exercise those rights, such statements should be excluded. Where there is an objection to such testimony, the trial court, in an attempt to alleviate the error, should immediately strike the testimony and instruct the jury that they should not consider it, and should then prohibit the prosecutor from mak-

ing any further reference to the defendant's exercise of his right to remain silent.

Continued expansion of the harmless error rule will merely encourage prosecutors to attempt to get such testimony in, since they know that, if they have a strong case, such testimony will not be considered to be reversible error, yet if they have a weak case, they will use such testimony to buttress the case to gain a conviction and then hope that the issue is not raised on appeal.

The consideration of the other alleged errors is not necessary in the light of our holding herein, and such alleged errors may not occur at retrial.

Defendants' convictions are reversed and these consolidated cases are remanded for new trial.

All concurred.