PEOPLE v DUNN

OPINION OF THE COURT

1. CRIMINAL LAW—TRIAL—CONSTITUTIONAL RIGHTS—INFERENCE OF GUILT—APPEAL AND ERROR.

It was prejudicial error for the prosecutor to elicit on direct examination of a police officer witness the fact that the defendant had exercised his constitutional right to remain silent, where the purpose of such testimony was not to impeach defendant's credibility, since defendant had not yet testified, but as substantive evidence of defendant's guilt, even in the absence of defendant's objection, because there is a great probability that the jury could have inferred guilt on the basis of the defendant's silence.

2. CRIMINAL LAW—TRIAL—CONSTITUTIONAL RIGHTS—HARMLESS ERROR —BURDEN OF PROOF.

The harmless error doctrine does not extend to deliberate prosecutorial elicitation of the fact that the defendant chose to exercise his right to remain silent unless the prosecution can establish that the constitutional error was harmless without a reasonable doubt, and the burden of that proof is on the prosecution.

DISSENT BY DANHOF, J.

3. CRIMINAL LAW—TRIAL—PROSECUTOR'S REMARKS—HARMLESS ERROR.

*The prosecutor's two references on direct examination of a police officer witness to the fact that the defendant had elected to remain silent during interrogation was error, but the people have demonstrated that the error was harmless beyond a reasonable doubt where the defendant made no allegation that the references to his silence forced a change in trial strategy, subsequently testified fully as to his version of what happened,*

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 21 Am Jur 2d, Criminal Law § 356.
  59 Am Jur 2d, Trial § 459.

*and caused his statement made with his attorney present some
10 or 12 hours after the incident to be read into the record;
thus defendant was neither forced to the stand, nor was the
jury left to infer that his silence at the time of his arrest was
an indication of his guilt.*

Appeal from Macomb, Walter P. Cynar, J. Submitted Division 2 January 8, 1973, at Lansing. (Docket No. 10638.) Decided April 23, 1973.

Duane L. Dunn was convicted of manslaughter. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Don L. Milbourn,* Assistant Prosecuting Attorney, for the people.

*Daner, Freeman, McKenzie & Matthews, P. C.,* for defendant on appeal.

Before: BRONSON, P. J., and McGREGOR and DANHOF, JJ.

McGREGOR, J. This case arose out of the killing of one Donald Jarvis on the evening of August 10, 1969. The defendant was charged with second-degree murder, contrary to MCLA 750.317; MSA 28.549.

On June 9, 1970, after a jury trial, the defendant was found guilty of the crime of manslaughter, MCLA 750.329; MSA 28.561. On July 2, 1970, defendant was sentenced to a term of 3 to 15 years in prison. He has appealed to this Court as of right.

On appeal, defendant raises numerous allegations of error. Due to our disposition of this matter, the only question we need consider is whether

it was prejudicial error for the prosecutor to elicit on direct examination the fact that defendant had exercised his right to remain silent.

While examining a police officer on direct examination, the prosecutor asked:

"*Q.* What did you do after that, officer, after you talked to the people inside?
"*A.* I went and informed Mr. Dunn of his rights. I read him the Miranda warning act at which time he stated he would remain silent."

Again, a second time, while examining a police detective, the prosecutor asked:

"*Q.* Did you advise him of any constitutional rights then?
"*A.* I asked him if he had been so advised and he said he had been, and he knew what they were.
"*Q.* Did you receive any type of a statement from him at that point?
"*A.* No.
"*Q.* He exercised his constitutional rights?
"*A.* He did."

In *People v Jablonski,* 38 Mich App 33, 37, 38, 39 (1972), this Court stated:

"Long before *Miranda [v Arizona,* 384 US 436, 468; 86 S Ct 1602, 1624; 16 L Ed 2d 694, 720; 10 ALR3d 974, 1008 (1966)], the rule in Michigan was that the prosecutor could not comment on the failure of a defendant to make a statement in the face of an accusation. See *People v Bigge,* 288 Mich 417, 425 (1939). This Court, in *People v Gisondi,* 9 Mich App 289 (1967), held that statements of a person in custody may be used in evidence against him, but his silence may not. * * *
"The admission of such testimony obviously was error. The only question is whether or not it was harmless error. For the reasons set forth in *State v Stuart, supra,* [456 SW 2d 19 (Mo, 1970)] it would not appear

that it could be said that it was harmless error. * * * It would appear that the better rule is that there is absolutely no probative value in eliciting that the defendants were informed of their rights unless the prosecutor intends to offer a confession or statement made by the defendants. Since there is a potential prejudicial effect even from the mere mention of the rights statement, even in the absence of testimony that the defendant wished to exercise those rights, such statements should be excluded. * * *

*"Continued expansion of the harmless error rule will merely encourage prosecutors to attempt to get such testimony in,* since they know that, if they have a strong case, such testimony will not be considered to be reversible error, yet if they have a weak case, they will use such testimony to buttress the case to gain a conviction and then hope that the issue is not raised on appeal." (Emphasis added.)

Here, as in *Jablonski,* we cannot say that this is harmless error. There is a great probability that the jury could infer guilt on the basis of defendant's silence. Here, as in *Jablonski,* the prosecutor elicited the testimony that Dunn exercised his constitutional right to remain silent, not to impeach Dunn's credibility, but as substantive evidence of defendant's guilt.

This situation is clearly distinguishable from the impeachment exception to *Jablonski,* as stated in *People v Graham,* 386 Mich 452 (1971), and *People v Bobo,* 41 Mich App 362 (1972). In *People v Graham,* the Court stated:

"In our holding today, we stress that the defendant's refusal to speak during interrogation is admissible only to impeach his own inconsistent statements at trial." 386 Mich at 458.

Similarly, in *People v Bobo, supra,* this Court stated that:

"[W]here defendant's prior refusal to make a statement is inconsistent with his affirmative allegations at the time of trial, the prosecution may question the defendant on this matter, so as to impeach his credibility. *People v Graham, supra.*" 41 Mich App at 368.

*Bobo* was then distinguished from *Jablonski,* as follows:

"[I]n *Jablonski* the defendant did not take the stand and the prosecution elicited the fact that defendant had refused to make a statement after being informed of his right to remain silent, not for the purpose of impeachment, but for the purpose of establishing in evidence that defendant had refused to make any statement. *We reiterate, the prosecution may not use defendant's failure to make a statement as evidence of defendant's guilt.*" (Emphasis added.) 41 Mich App at 368–369.

The two elicitations as to defendant's silence in the instant case were brought out on direct examination and not for the purpose of impeaching defendant's credibility, as defendant had not yet testified. Consequently, it was error, even in the absence of objection, to allow the prosecutor to bring this out. In *People v Severance,* 43 Mich App 394 (1972), this Court held:

"The rule is now firmly established that the prosecution may not use at trial the fact that a defendant exercised his privilege of silence in face of accusation, for such would penalize the defendant for exercising the privilege. *People v Jablonski,* 38 Mich App 33 (1972). The people assert that inasmuch as defendant failed to object at trial he has not preserved the issue for appeal. This is generally true, however, such failure to object does not preclude review of an alleged violation of a constitutional right. *People v Cotton,* 38 Mich App 763 (1972)."

As we are convinced that it is highly probable

that the jury may have considered the prosecution's testimony, that defendant chose to exercise his constitutional right to remain silent as evidence of defendant's guilt, we cannot say that this was mere harmless error.

Although *People v Fredericks,* 36 Mich App 632 (1971), may be cited as standing for the proposition that the defendant's subsequent testimony will render the error "harmless," we can no longer consent to extending the harmless error doctrine to the deliberate prosecutorial elicitation of the fact that the defendant chose to exercise his right to remain silent. While this writer concurred in *People v Fredericks, supra* (such concurrence was prior to the decisions in *People v Jablonski, supra,* and *People v Bobo, supra),* it does not seem correct to extend the harmless error doctrine to the instant situation unless the prosecution can establish that the constitutional error was harmless beyond a reasonable doubt.

*Chapman v California,* 386 US 18, 22–24; 87 S Ct 824, 827–828; 17 L Ed 2d 705, 710–711 (1967), *reh den* 386 US 987; 87 S Ct 1283; 18 L Ed 2d 241 (1967), holds that the prosecution has the burden of proving that the constitutional error was harmless beyond a reasonable doubt. Here, the prosecution has not met that burden.

Reversed and remanded.

BRONSON, P. J., concurred.

DANHOF, J. *(dissenting).* I must dissent from the majority opinion and would affirm the defendant's conviction of manslaughter.

This case arose out of the killing of one Donald Jarvis. At approximately 10 pm on the evening of August 10, 1969, three young persons and the deceased, Donald Jarvis, arrived at a bar owned by

the defendant, Duane Dunn. After using the bar's restroom facilities, two of Jarvis's companions purchased cigarettes and Jarvis purchased a shell of beer. At this point, the bartender, Jay Dunn, brother of the defendant, ascertained that Jarvis's companions were underage. He asked these three people to leave the bar and they complied with his request. Donald Jarvis remained on the premises in order to finish his beer. After a short period of time, one of Jarvis's female companions came back into the bar in order to obtain a light for a cigarette. Jay Dunn, the bartender, noticed the girl's return and got into a disagreement with Jarvis over her return. Defendant, Duane Dunn, who was in the bar at the time, noticed the disagreement between Jarvis and his brother, Jay. Defendant Duane Dunn testified that he went behind the bar in order to get a quarter to refund Jarvis for his beer; he further stated that as he reached for the glass he knocked it out of Jarvis's hand. A heated argument ensued. Jarvis was hustled out of the bar. Jarvis and his companions remained outside the bar and several shouted obscenities were heard by the people inside.

Defendant then went behind the bar and removed a .32-caliber Smith & Wesson six-shot revolver. Defendant cocked the gun as he walked to the door. He ordered the four people to leave. The defendant stated that Jarvis was on his motorcycle; that the defendant believed that they were about to leave; and that as the defendant attempted to release the hammer it slipped and the gun went off.

Defendant thereupon returned to the barroom and was quoted as saying: "I hit him"; "Call the police. I shot someone"; "Call the police" and "Call the cops. I shot somebody."

Jarvis was pronounced dead on arrival at St. Joseph's Hospital.

The trial court gave the jury instructions on second-degree murder and on manslaughter.

Defendant claims, and the majority agree, that it was reversible error for the prosecutor to elicit on direct examination the fact that defendant had exercised his right to remain silent. There were two references to defendant's silence brought out on direct examination before the defendant testified. This was error. *People v Jablonski,* 38 Mich App 33 (1972). This Court has indicated that it will not decline to review such error even in the absence of an objection. *People v Severance,* 43 Mich App 394 (1972). It remains to be resolved, however, whether these references were harmless under the facts of the instant case. *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967), *reh den* 386 US 987; 87 S Ct 1283; 18 L Ed 2d 241 (1967). Defendant makes no allegation that these references to his silence forced a change in trial strategy. The people point out that defendant subsequently testified fully as to his version of what happened. *People v Fredericks,* 36 Mich App 632, 639 (1971). The defendant also caused a statement made by him to be read into the record. This statement was made with his attorney present some 10 to 12 hours after the incident in question. Thus, the defendant was neither forced to the stand, nor was the jury left to infer that his silence at the time of his arrest was an indication of his guilt. I would hold that the people have demonstrated that the error present here was harmless beyond a reasonable doubt.

I would affirm.