The STATE of North Dakota, Plaintiff
and Appellee,

v.

Robert Dale BRAGG, Defendant
and Appellant.

Cr. No. 445.

Supreme Court of North Dakota.

Aug. 29, 1974.

Rehearing Denied Oct. 10, 1974.

Daniel J. Chapman, Bismarck, for defendant and appellant.

Rodney S. Webb, State's Atty., Grafton, for plaintiff and appellee.

PAULSON, Judge.

The appellant, Robert Dale Bragg [hereinafter "defendant"], has appealed to this court from the verdict of a jury finding him guilty and final judgment upon a conviction of the crime of burglary in the District Court of Walsh County. The defendant was arrested and bound over for trial on an information alleging that he broke into the business office of the Grafton State School at Grafton, North Dakota, on or about July 24, 1972; and that he stole $439.90 in cash and $1,270.56 in checks from a safe-cabinet located therein. The defendant had insufficient funds to employ an attorney and an attorney was appointed to represent him in connection with the preliminary proceedings and trial of the matter.

The case was tried in December of 1972. Immediately prior to the presentation of the State's case, defendant's attorney moved *in camera* to limit the testimony of the State's first witness, Clark J. Monroe, a North Dakota state parole officer, to prevent the jury from inferring that the defendant had a prior criminal record. The trial judge denied this motion but noted that he would give a cautionary instruction to the jury to vitiate the effects of any such inference.

At trial, Mr. Monroe testified that he was a state parole agent; that he had spoken to the defendant on or about July 13, 1972; that the defendant had told him at that time that the defendant had no money and was unemployed; and that he (Monroe) had checked with the personnel officer of the State School, where defendant had previously been employed, and had verified the unemployment of the defendant.

The State's next witness, Officer Celestine Novak of the Grafton Police Department, then testified as to the results of his investigation. During the course of his testimony, he was shown a number of photographs of the scene of the crime and was asked what each depicted. The following colloquy ensued:

"Q Number Six [photograph, 1 of 10 comprising State's Exhibit No. 1] shows what?

"A Number Six shows the safe that the defendant entered.

"THE COURT: Just a moment now. I think that—would counsel approach the bench.

"(Discussion had off the record at the bench.)

"THE COURT: Ladies and gentlemen of the jury, the Court is going to order stricken from the record the statement of the witness 'the safe that the defendant entered.' Whether or not the defendant entered that safe is the whole question for the jury to determine in this trial. It is a prejudicial statement by the witness to state that the defendant entered the safe. So, therefore, that statement will be stricken."

Defendant made no objection of record to the statement nor to the sufficiency of the curative action taken by the trial judge.

Officer Novak also testified on direct examination that he had interviewed the defendant on July 27, 1972. His testimony was as follows:

"Q What did you say to Mr. Bragg and what did he say to you?

"A I asked him about the burglary at the State School.

"Q What was his response?

"A And he stated that it was none of my business."

Defendant's attorney then objected to this testimony, on the basis that there was no showing that the defendant had been advised of his rights prior to the questioning being testified to. Officer Novak then testified that defendant had been given the *Miranda* warnings prior to the questioning and defendant withdrew his objection.

Officer Novak further testified that his investigation showed that the defendant had made certain purchases, which together with a bank deposit, totaled $495, on or shortly after July 24, 1972. No objection was made to this testimony.

Other witnesses for the State tended to establish that the defendant's fingerprints were found on the header above the business office door at the State School.

Pat Berg, a former employee at the State School, testified that she had seen the defendant in the Administration Building of the School shortly after midnight on July 24, 1972.

After conviction, another attorney was appointed for defendant and this appeal was brought on defendant's behalf.

Defendant raises the following issues for review by this court:

1. Was it error to permit the parole officer to testify without limiting his testimony, and, if so, does the effect of such testimony constitute prejudicial error?

2. Did the testimony of Officer Novak on direct examination that "Number Six shows the safe that the defendant entered" constitute prejudicial error such that its prejudicial effect could not be cured by its being stricken with an admonition to the jury?

3. Does prejudicial error exist when an investigating officer testifies that he advised the defendant of his right to remain silent and then testifies that the defendant was uncooperative and responded that it was none of the officer's busi-

ness to a question concerning the crime in question, said testimony thus amounting to a comment on the defendant's right to remain silent? More specifically, can this court review such an allegation of error when no objection was made to said testimony at time of trial?

4. Were sufficient precautions taken to permit the prosecution witness to make an identification of the defendant in the absence of any lineup of other persons wearing a full beard such as the defendant wore? Is such an allegation reviewable by this court in light of the fact that no objection was made to any identification procedures at time of trial?

5. Did the court err in determining that testimony that the defendant was impecunious two weeks before the alleged offense was relevant?

6. Did the court err in admitting hearsay evidence as to excessive spending by the defendant shortly after the alleged offense and is such error reviewable given the fact that no objection to such hearsay evidence was made?

7. Is the evidence sufficient to sustain the conviction?

8. Was appellant afforded effective appointed counsel?

## TESTIMONY OF PAROLE OFFICER

■ Prior to the presentation of any evidence in the case at bar, counsel for the defendant, in chambers, objected to the use of the defendant's parole officer as a witness for the State. Counsel stated that, because the case against the defendant was circumstantial, the introduction of the defendant's past criminal record would unduly prejudice the jury, and, furthermore, the testimony was irrelevant. The State responded that the testimony of the parole officer was to be used to introduce relevant evidence and insisted that his employ-

ment identification was necessary as it went to the witness' credibility.

The trial court found for the State and said:

"Now, I of course recognize in identifying the witness as a parole officer you are in effect saying that the man has committed a previous crime and therefore he is on parole or on probation but this could be overcome by the cautionary instruction to the jury also.

. . . . . .

"I recognize he has to be identified. It seems to me he can be identified very simply as a parole agent for the State of North Dakota period. I also intend, unless the defense would object to it, to give a cautionary instruction to the jury to the general effect. . . . —there is no evidence that the defendant has any criminal record and that they should view the conversation with Mr. Monroe as an ordinary conversation between two persons unrelated to any prior criminal offenses if there are any. . . ."

Mr. Monroe, the parole officer, was then sworn and he testified that he had had a conversation with the defendant on July 13, 1972, and that he (Monroe) thereby learned, among other things, that the defendant had no money; and, upon further investigation, that he learned that the defendant's employment with the State School at Grafton had been terminated.

At the conclusion of the trial, during which the defendant did not testify, a cautionary instruction was not given because of a request by defense counsel that such instruction be omitted. Defense counsel stated:

". . . I feel that a cautionary instruction however worded may draw attention to it, to Mr. Monroe's testimony, and I feel at the present time the jury may very well not draw an inference that Mr. Bragg has a previous criminal record."

We hold that the trial court erred in overruling defendant's motion *in limine* and allowing the prosecution to put before the jury circumstantial evidence from which the jury could reasonably infer that the defendant had a prior criminal record. We further hold that such error was prejudicial and necessitates that the conviction of the defendant be reversed.

In State v. Schlittenhardt, 147 N.W.2d 118 (N.D.1966), the defendant moved for a mistrial after the prosecutor had elicited from a police detective testimony that defendant had been identified by the complaining party through discovery of defendant's picture in a book entitled "Known Criminals". Further, the book in question was shown to the police detective witness and identified by him as the self-same book he had used.

We said, in *Schlittenhardt, supra,* 147 N. W.2d at 125:

"There is no question about the fact that the reference in testimony to, and the physical viewability and perhaps unintended exhibition to the jury of, this red-lettered book entitled 'Known Criminals', was strongly prejudicial to the rights of this defendant. The trial judge called it prejudicial in the record, in denying defendant's motion and in admonishing the jury. The trial judge did make an effort to correct this situation by a curative statement to the jury, and later by a statement contained in the instructions. However, in the light of practical courtroom atmosphere in a criminal case, as distinguished from esoteric theory, not only did prejudice result to the defendant, but the effect of such prejudice was not cured by what the court said in admonishing the jury and later in its instructions. It would require extreme naivete to hold otherwise."

In *Schlittenhardt,* 147 N.W.2d at 127, we went on to point out that our holding that testimony about and display of a book entitled "Known Criminals", which book contained the defendant's picture, was prejudicial to the defendant:

". . . has nothing to do with the principle that, under some conditions, prior convictions can be introduced in evidence. It is true that they may be. However, there is no such attempt here, but merely the display, and reference to in evidence, of some book called 'Known Criminals', which is used with reference to a defendant. This is comparable to the techniques used in the Middle Ages when criminals were branded with a certain brand to correspond to the nature of their past crimes.

"Since in this case the defendant did not take the witness stand, the State was deprived of the right to cross-examine him concerning past criminal convictions."

In Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948), the United States Supreme Court said:

"The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice."

In Johnson v. United States, 356 F.2d 680, 684 (C.A. 8th 1966), the Court said:

"The law is clear that evidence of the commission of other crimes is incompe-

tent and inadmissible for the purpose of showing the commission of the crime charged. This rule is based on the common-sense proposition that such evidence draws the attention of the jury away from the real issues and injects an additional and confusing burden upon the defense. But, there are broad exceptions to this rule; such evidence is admissible to show motive, identity, a common scheme or plan, guilty knowledge or intent, etc. [Citations omitted.] *Generally speaking, such evidence will be found extremely prejudicial and require reversal unless the reference to prior offenses is clear and cogent and an explicit instruction as to its limited competence is given. . . ."* [Emphasis added.]

In the instant case, the reference to prior offenses is not clear or cogent since such reference merely brought to the attention of the trial jury immediately after the start of the trial that the defendant was a parolee. We think that a reasonable juror could have inferred from this that the defendant had a prior criminal record, the extent of which was not known, but the seriousness of which was great since defendant at some time in the past had been convicted of an offense. Otherwise, why would defendant have a parole officer who checked on his activities?

We are of the opinion that the defendant's attorney was correct when he stated at the conclusion of the trial that an instruction by the court that the jury should not draw an inference from the fact that a parole officer testified would merely magnify the effect of the error in admitting testimony which served to create the grounds for an inference that the defendant was a person of bad character, especially in light of the fact that the reason for allowing such identification of the parole officer (i. e., the "credibility" of the witness) was made of such ethereal stuff when placed against the substantial magnitude of the harm done to the defendant in impugning his character. We fail to see why the parole officer could not have been

identified merely as a "state employee" or by some other correct occupational tag (or no occupational tag), creating an innocuous effect on the defendant but sufficiently establishing the credibility of the witness.

In the instant case we find no substantial reason justifying the identification of the parole officer when counterpoised against the potential harm to the defendant of the admission of testimony from which the jury could have most reasonably inferred the defendant to be of bad character.

 We believe that the defendant did not waive his right to object to the admission of such testimony when he demurred to a proposed admonitory instruction to negate the effect of such an inference, for what we said in *Schlittenhardt, supra,* 147 N.W.2d at 125, is equally applicable here in regard to the nugatory curative effect and inefficacy of such an instruction:

"The trial judge called it prejudicial in the record. . . . The trial judge did make an effort to correct this situation by a curative statement to the jury, and later by a statement contained in the instructions. However, in the light of practical courtroom atmosphere in a criminal case, as distinguished from esoteric theory, not only did prejudice result to the defendant, but the effect of such prejudice was not cured by what the court said in admonishing the jury and later in its instructions. It would require extreme naivete to hold otherwise."

The prosecutor shares equally in the duty of ensuring that a criminal defendant receives a fair trial. Where, as here, he advertently brings to the attention of the finders of fact facts raising an inference as to the alleged bad character of the defendant without a tenable countervailing purpose for presenting those facts, the prosecutor has failed in this duty.

Several cases from other jurisdictions have held that it is reversible error to ad-

mit the testimony of a probation officer as a probation officer for the reason that the prejudicial inference as to defendant's character untowardly affects the finders of fact. See People v. McCain, 42 A.D.2d 866, 347 N.Y.S.2d 72 (1973); People v. Kessler, 221 Cal.App.2d 187, 34 Cal.Rptr. 433 (1963).

## TESTIMONY OF INVESTIGATING OFFICER

■ The testimony of Officer Novak that "Number Six [a photograph] shows the safe that the defendant entered" was characterized by the trial judge as a "prejudicial statement" at the time the judge ordered it stricken from the record. Defendant, however, made no motion for a mistrial on the basis of the effect of the witness' statement on the jury.

In State v. Albers, 211 N.W.2d 524 (N.D.1973), we held in paragraph 3 of the syllabus:

"As a general rule, an assignment of error in the admission of evidence will not be reviewed by this court unless proper and timely objection is made to the admissibility thereof, and the admissibility of such evidence cannot be challenged for the first time upon appeal."

In State v. Julson, 202 N.W.2d 145, 153 (N.D.1972), we said:

"The proper time to object to the introduction of evidence is when it becomes apparent that error will be committed by receiving evidence which is not admissible, as when the evidence is offered, or when a question is asked which is in itself improper or calls for an improper answer.

"An objection to a question comes too late after the question has been answered. The remedy in such case is a motion to strike the question and answer from the record."

In the instant case, where the trial judge ordered the answer of the witness stricken from the record after an off-the-record consultation with both attorneys, it was incumbent upon the defendant to move for a mistrial in order to preserve the issue for appellate review as to whether the witness' statement was prejudicial despite the order striking it.

In State v. Haakenson, 213 N.W.2d 394 (N.D.1973), we affirmed the general rule that one of the touchstones for an effective appeal on any issue should be "that the matter has been appropriately raised in the trial court so that the trial court can intelligently rule on it". The reasons for this rule are obvious for, if it were otherwise, it would behoove a defendant to sit by and invite error in the hope that if he did not prevail the first time, he would prevail upon appellate review of invited error. Such a situation would be untenable since it would require a trial judge to be the advocate of the defendant in the prevention of error.

Further, the duty cast upon the defendant to make the appropriate objections during criminal proceedings in order to preserve the issue for appellate review allows the trial judge to take the necessary actions as an impartial arbiter to ensure that the defendant receives a fair trial.

■ Since the defendant failed to move for a mistrial or make other appropriate objection, he has not preserved for appellate review the issue of whether the statement of opinion of the witness was prejudicial or whether the striking of that statement was a sufficient palliative.

■ Defendant raises for our review the issue as to whether it was error for the trial judge to admit the testimony of Officer Novak that the defendant had been advised of his rights (including the right to remain silent) and that, thereafter, in response to a question about the burglary,

the defendant had stated to the officer that it was none of the officer's business.

Defendant holds out to us that this testimony constituted a comment on the defendant's right to remain silent and was therefore prejudicial error.

However, no objection was made to this testimony and, therefore, under the general rule, we are constrained to say that this issue was not properly preserved for our review. However, although it is unnecessary for us to review this issue, we feel that it is appropriate for us to comment thereon in light of the recent adoption of the North Dakota Rules of Criminal Procedure, and in light of the fact that an explication would be helpful to the trial court in the event there is a further trial in this matter.

In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court, in a footnote, commented upon the aspersions which might be cast through any comment upon the defendant's invocation of his Fifth Amendment privilege of remaining silent, when it said, at page 468, note 37, 86 S.Ct. at page 1624:

"Lord Devlin has commented:

" 'It is probable that even today, when there is much less ignorance about these matters than formerly, there is still a general belief that you must answer all questions put to you by a policeman. . . .' Devlin, The Criminal Prosecution in England 32 (1958)."

The court then went on, in the same footnote, to limit such comment when it said:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. *The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.* [Citations omitted.]" [Emphasis supplied.]

We believe that defendant's statement to the effect that his knowledge of any burglary which had occurred was none of the investigating officer's business was an invocation by the defendant of his Fifth Amendment privilege of remaining silent as to the particular interrogatory posed.

The prosecutor argues that, although the *Miranda* warnings were given to the defendant, there was no showing by the defendant that the particular interview referred to was a "custodial interrogation". The defendant in the instant case had the right to invoke the Fifth Amendment privilege and his response to the interrogatory posed appears to fall within the ambit of responses which are sufficiently evocative of the invocation of the privilege so as to be protected from disclosure at trial, since such disclosure amounts to a comment on the invocation of the privilege, which disclosure is forbidden by Miranda v. Arizona, *supra.*

In People v. Bobo, 390 Mich. 355, 212 N.W.2d 190, 192 (1973), the Michigan Supreme Court said:

"We will not condone conduct which directly or indirectly restricts the exercise of the constitutional right to remain silent in the face of accusation. 'Non-utterances' are not statements. The fact that a witness did not make a statement may be shown only to contradict his assertion that he did."

In People v. Severance, 43 Mich.App. 394, 204 N.W.2d 357, 358 (1972), a Michigan Court of Appeals posed the question as follows:

"Was it reversible error to allow a police officer to testify that after defendant had been warned of his constitutional rights, he remained silent, despite the absence of objection thereto?"

In determining that such testimony was reversible error, the Michigan Appeals Court said in *Severance, supra,* 204 N.W.2d at 359:

"The rule is now firmly established that the prosecution may not use at trial

the fact that a defendant exercised his privilege of silence in face of accusation, for such would penalize the defendant for exercising the privilege. People v. Jablonski, 38 Mich.App. 33, 195 N.W.2d 777 (1972). . . .

. . . . . .

"Admission of such testimony is reversible error unless we can say that it is harmless error under the ruling in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), reh. den. 386 U.S. 987, 87 S.Ct. 1283, 18 L. Ed.2d 241 (1967).

"In People v. Jablonski, 38 Mich.App. 33, 38–39, 195 N.W.2d 777, 780 (1972), our Court stated:

" 'The admission of such testimony obviously was error. . . . It would appear that the better rule is that there is absolutely no probative value in eliciting that the defendants were informed of their rights unless the prosecutor intends to offer a confession or statement made by the defendants. Since there is a potential prejudicial effect even from the mere mention of the rights statement, even in the absence of testimony that the defendant wished to exercise those rights, such statements should be excluded.' "

We adhere to the strictures promulgated by the United States Supreme Court in Miranda v. Arizona, *supra*, as we have stated them above. We further believe that the implementation of those strictures on the prosecutorial function as demonstrated by the Michigan cases discussed should be followed by the trial court in any further proceedings following our remand.

■ In regard to the defendant's argument that error not brought to the attention of the trial court is yet reviewable, we note that a series of Michigan cases including People v. Bobo, *supra*; People v. Severance, *supra*; and People v. Thomas, 44 Mich.App. 649, 205 N.W.2d 604

(1973), have held that error not objected to, but which nevertheless infringes on a constitutional right, is reviewable. It is unnecessary for us to adopt any standard, regarding the reviewability of issues not raised at trial, at this time; nor to discuss any inherent power of this court to correct a substantial injustice. Rather, we take cognizance of Rule 52(b) of our North Dakota Rules of Criminal Procedure, which provides:

"RULE 52. *Harmless Error and Obvious Error*

. . . . . .

"*(b) Obvious error.* Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

## EFFECTIVE APPOINTED COUNSEL

In Smith v. Woodley, 164 N.W.2d 594, 597 (N.D.1969), a habeas corpus proceeding in which the petitioner alleged lack of effective assistance of counsel at his trial, we said:

"The books in the law libraries are replete with cases alleging incompetency or ineffective assistance of counsel at trial. These cases uniformly hold that the proof of the effectiveness of such assistance lies in the character of the resultant proceedings, and unless the purported representation by counsel was such as to make the trial a farce and mockery of justice, mere allegations of incompetent or ineffective counsel ordinarily will not suffice as grounds for the issuance of a writ of habeas corpus or for the reversal of a conviction. . . . A lack of effective assistance of counsel must be such as to shock the conscience of the court and make the proceedings a farce and mockery of justice. Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667 (1945), cert. denied 325 U.S. 889, 65 S. Ct. 1576, 89 L.Ed. 2002; State v. Keller, 57 N.D. 645, 223 N.W. 698, 64 A.L.R. 434 (1929)."

In light of our holding in this case requiring reversal, it is not necessary for us to rule on effectiveness of counsel. However, for the guidance of trial judges and the Bar, we note that the United States Court of Appeals for the Sixth Circuit, in Beasley v. United States, 491 F.2d 687 (1974), recently abandoned the "farce and mockery" test and said, at page 693:

"Most recently, in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), the Supreme Court stated that 'It has long been recognized that the right to counsel is the right to the effective assistance of counsel.' It held that the advice rendered by an attorney as to whether a confession would be admissible in evidence must be 'within the range of competence demanded of attorneys in criminal cases.' 397 U.S. at 771, 90 S.Ct. at 1449. '[I]f the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and . . . judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts.' 397 U.S. at 771, 90 S.Ct. at 1449.

"In view of the Supreme Court's holdings, we must agree with the Courts of Appeals for the Fifth and District of Columbia Circuits, that the 'farce and mockery' test should be abandoned as a meaningful standard for testing Sixth Amendment claims. West v. Louisiana, 478 F.2d 1026 (5th Cir. 1973); Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967)."

As to other issues raised by the appellant and denominated by us as Issues Numbers 4, 6, and 7, we find that they are not reviewable since they are subject to the general rule that matters not brought to the attention of the trial court are not subject to our review.

■ As to Issue Number 5, which issue was preserved for review, we find that the trial judge did not abuse his discretion in ruling that testimony as to the defendant's impecunious state, approximately eleven days before the date of the offense, was relevant.

Reversed and remanded for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and JOHNSON, VOGEL and KNUDSON, JJ., concur.