STATE of North Dakota, Plaintiff
and Appellee,

v.

Darold A. ASBRIDGE, Defendant
and Appellant.

Criminal No. 950413.

Supreme Court of North Dakota.

Nov. 13, 1996.

Cynthia M. Feland, State's Attorney, Carson, for plaintiff and appellee.

Michael R. Hoffman (argued), and Thomas A. Dickson (on brief), Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

Darold A. Asbridge appealed from a criminal judgment entered on a jury verdict finding him guilty of driving under the influence of alcohol in violation of N.D.C.C. § 39–08–01. We conclude the statutorily-required foundation for the trial court's admission of Asbridge's blood-test result under N.D.C.C. § 39–20–07 was properly established, reject other allegations of reversible error, and affirm the criminal judgment.

On May 12, 1995, North Dakota Highway Patrolman Rick Michels stopped Asbridge's vehicle north of Elgin after observing it cross over the center line into Michels' lane of traffic. Michels recognized Asbridge and noticed he had red, bloodshot eyes, flushed cheeks, and the odor of alcohol on his breath. Michels requested that Asbridge accompany him to his squad car.

While in the squad car, Michels gave Asbridge the implied consent advisory and asked him to recite the alphabet and count backwards from 75 to 60. Asbridge said he could perform both tests, but he wanted to speak with an attorney before doing them. Asbridge then performed several roadside field sobriety tests, which he failed. Michels placed Asbridge under arrest for driving under the influence of alcohol, informed him of his *Miranda* rights, and took him to the Elgin Hospital for a blood test. The test result showed Asbridge had a blood alcohol concentration of .19 percent by weight.

At Asbridge's trial, the blood-test result was admitted into evidence over Asbridge's objection that no proper foundation was provided for its admission under N.D.C.C. § 39–20–07. The jury found Asbridge guilty of driving under the influence of alcohol.

I

The primary issue in this case is whether the trial court correctly ruled the statutory foundation requirements under N.D.C.C. § 39–20–07 were satisfied for admission of the blood-test result.

The prosecution relied on three exhibits to establish foundation for introduction of the blood-test result. Michels identified State's Exhibit 1, which is a checklist he completed indicating that he had performed each required step to submit the blood sample for analysis. Asbridge did not object to this exhibit. Michels also identified State's Exhibit 2, which is a "statement" of the registered nurse who collected Asbridge's blood sample. The nurse stated the method she used to collect the blood sample. Asbridge objected, based on lack of foundation, but the objection was overruled.

Finally, Michels identified State's Exhibit 3, which was a notarized statement from the State Department of Health and Consolidated Laboratories signed by Aaron E. Rash:

"I, Aaron E. Rash, do hereby certify that I am the duly appointed Deputy State Toxicologist of the State of North Dakota and the official custodian of the records and files of the office thereof, and that I have carefully compared the Analytical Report (Form 107) and Form 104 *TL–95–0714 ASBRIDGE, DAROLD A* hereto attached with the respective original as the same appears of record on file in the Office of the State Toxicologist in the County of Burleigh, North Dakota, and find the same to be a true and correct copy thereof and of the whole thereof. Further I certify that the analysis of the blood sample has been performed according to the method and with a device approved by the State Toxicologist and by an individual certified by the State Toxicologist to conduct blood alcohol analysis pursuant to 39–20–07 subsection 5 of NDCC."

The Analytical Report and Form 104 were attached to the document. The Analytical Report stated the "Approved Method to Con-

duct Blood Alcohol Analysis 2(5–1–95)" was used and a "Shimadzu Model GC–9A, Serial # 20540N" was the testing device used. The Analytical Report was signed by a chemical analyst, Thomas Hoesley.

Asbridge objected, claiming foundation was lacking because no list of certified operators or analysts was introduced, no list of certified testing devices was introduced, and no certified copy of the approved method to conduct a blood-alcohol test was introduced. Asbridge also asserted the statements in the Rash document were inadmissible hearsay. The prosecutor argued that the form had been changed by the State Toxicologist to reduce the amount of paperwork involved in alcohol-related cases. The trial court allowed the exhibit and blood-test result into evidence.

 The result of a blood-alcohol test must be admitted into evidence in an alcohol-related proceeding if the test was fairly administered according to the toxicologist's approved procedures. *State v. Zimmerman,* 516 N.W.2d 638 (N.D.1994); N.D.C.C. § 39–20–07(8). Whether a blood test was fairly administered is a preliminary question of admissibility left to the discretion of the trial judge. *State v. Vogel,* 467 N.W.2d 86 (N.D. 1991); N.D.R.Ev. 104(a) and 1008. The statute, N.D.C.C. § 39–20–07, eases the burden of the prosecution in laying an evidentiary foundation for a blood-alcohol report and balances procedural efficiency and scientific reliability by allowing scrupulously completed documents as evidence in lieu of lengthy testimony. *See State v. Schwalk,* 430 N.W.2d 317 (N.D.1988).

In *State v. Jordheim,* 508 N.W.2d 878, 881 (N.D.1993), we carefully outlined one method of developing the proper foundation for admission of blood-test results absent testimony of the chemist who performed the test:

"There are four main foundational elements in NDCC 39–20–07 that must be either documented or demonstrated for the admission of the test report. First, the sample must be properly obtained. Second, the blood test must be fairly administered. Third, the method and devices used to test the sample must be approved by the State Toxicologist. Finally, the blood test must be performed by an authorized person or by one certified by the State Toxicologist as qualified to perform it.

"These foundational elements can be ·demonstrated by properly completed· and certified documents alone. For a blood-alcohol test, the technician who drew the blood need not testify, if a written statement of the technician is introduced showing that the sample was drawn according to the methods approved by the State Toxicologist. NDCC 39–20–07(5) and (10). Fair administration, chain of custody, and compliance with the State Toxicologist's methods can be proved through a completed and certified Form 104. *McNamara v. North Dakota Dep't of Transp.,* 500 N.W.2d 585, 589–90 (N.D.1993); *State v. Schwalk,* 430 N.W.2d at 322. The approved methods, devices, and persons certified to administer the test can be shown by introducing copies of records filed by the State Toxicologist and certified by the clerk of court. NDCC 39–20–07(7). *See also Erickson v. Director, North Dakota Dep't of Transp.,* 507 N.W.2d 537 (N.D. 1993) (inspection requirements of NDCC 39–20–07(6) do not apply to laboratory blood testing equipment approved under (5)). When properly completed, these documents furnish the foundation to admit the blood-test report. Under the statute, testimony disputing the facts contained in these documents, if properly completed, will generally affect the weight given the blood-test result and not its admissibility."

Asbridge incorrectly assumes that *Jordheim* sets forth the exclusive method for admission of a blood-test result when the chemical analyst is not called to testify. As we have noted, blood-alcohol tests are governed by N.D.C.C. § 39–20–07(5), which authorizes the State Toxicologist to "approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and . . . issue a certificate to all qualified operators . . . ." Those records, when "certified by the clerk of the district court, must be admitted as prima facie evidence of the matters stated in the records," and a certified copy of the blood .analysis issued by the State Toxi-

cologist "must be accepted as prima facie evidence of the results of a chemical analysis performed under this chapter." N.D.C.C. § 38–20–07(7) and (8). Although subsections (7) and (8) state that these certified documents "must" be admitted and accepted as prima facie evidence, the legislature's use of the word "must" merely requires their admission and specifies their evidentiary effect in court. That these certified documents "must" be admitted in evidence does not suggest the legislature intended the certified lists of approved chemical-test operators and chemical testing devices, and the approved method to conduct alcohol analysis, are the only documents that will furnish the foundation for admission of a blood-test result.

■ We believe Rash's personal "certification page," which essentially incorporated by reference information in the attached Form 104 and Analytical Report, satisfies the foundational requirements for admission of a blood-test result under N.D.C.C. § 39–20–07(5). When the "certification page" and attachment are considered together, Rash certifies that the analysis was performed according to the method ["Approved Method to Conduct Blood Alcohol Analysis 2 (5–1–95)"] and with a device ["Shimadzu Model GC–9A, Serial # 20540N"] approved by the State Toxicologist and by an individual [Thomas Hoesley] certified by the State Toxicologist to conduct blood-alcohol analysis. This certification satisfies the statutory directives in N.D.C.C. § 39–20–07(5), and if the sample was properly obtained and the test was fairly administered, the blood-test result "must be received in evidence . . . ."

Because N.D.C.C. § 39–20–07(5) is a valid statutory exception to the hearsay rule, see Zimmerman, Rash's "certification page" was not subject to exclusion from evidence on hearsay grounds. We conclude that the trial court did not err in admitting Asbridge's blood-test result.

## II

Asbridge obtained a pretrial order in limine prohibiting prosecution witnesses from commenting about Asbridge's invocation of his right to talk to counsel during the conversation he had with Michels. Michels never-

theless during trial testimony referred to the fact Asbridge asked to call an attorney. Later during trial, Michels testified that after placing Asbridge under arrest he informed Asbridge of his Miranda rights. After both incidents, Asbridge moved for a mistrial but the judge denied the motions.

Asbridge relies on State v. Bragg, 221 N.W.2d 793 (N.D.1974), as support for his argument that the trial court should have granted a mistrial. In Bragg, we frowned upon admission of a police officer's testimony that the defendant had been advised of his Miranda rights, including the right to remain silent, and that afterward, in response to a question about the crime involved, the defendant told the officer it was none of his business. We concluded this was an improper reference to the defendant's invocation of his fifth amendment right to remain silent. We quoted with approval from People v. Jablonski, 38 Mich.App. 33, 195 N.W.2d 777, 780 (1972), a case where the court ruled reversible error occurred when the arresting officers were allowed to testify, over defense objection, that the defendants had been informed of their right to remain silent, and did not respond when asked whether they had anything to say:

"' "The admission of such testimony obviously was error. . . . It would appear that the better rule is that there is absolutely no probative value in eliciting that the defendants were informed of their rights unless the prosecutor intends to offer a confession or statement made by the defendants. Since there is a potential prejudicial effect even from the mere mention of the rights statement, even in the absence of testimony that the defendant wished to exercise those rights, such statements should be excluded." ' "

Bragg, 221 N.W.2d at 801. Several courts in more recent cases have ruled admission of testimony that a defendant remained silent after being given Miranda warnings was harmless error. See, e.g., United States v. Massuet, 851 F.2d 111 (4th Cir.1988), cert. denied sub nom., Trujillo v. United States, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 776 (1989); Crawford v. State, 494 So.2d 311 (Fla.Ct.App.1986); People v. Hairston, 86 Ill.

App.3d 295, 42 Ill.Dec. 4, 408 N.E.2d 382 (1980); *State v. Gadelkarim,* 256 Kan. 671, 887 P.2d 88 (1994); *People v. Carey,* 156 A.D.2d 983, 549 N.Y.S.2d 272 (1989).

Here, the right to speak to an attorney was invoked rather than the right to remain silent. Furthermore, Michels' testimony indicates Asbridge invoked this right before any *Miranda* rights were communicated to him. *See generally State v. Helgeson,* 303 N.W.2d 342 (N.D.1981). Michels was allowed to testify about each *Miranda* right he had advised Asbridge, but the prosecutor did not question Michels about Asbridge's response.

■ Although we, like the trial court, frown upon Michels' violation of the court's order in limine, and it is difficult to imagine any relevancy in Michels' testimony outlining the *Miranda* rights given to Asbridge, the trial judge is not required to declare a mistrial when an order in limine has been violated. *See State v. Sievers,* 543 N.W.2d 491 (N.D. 1996). The reference to Asbridge's invocation of the right to speak to an attorney was an isolated incident and the trial court promptly admonished the jury to disregard Michels' statement. The trial court gave a curative instruction telling the jury to disregard the reference to "invocation of an important constitutional right." A jury is presumed to follow instructions provided by the court. *State v. Kringstad,* 353 N.W.2d 302 (N.D.1984). During closing arguments, the prosecution did not focus on evidence of Asbridge's invocation of the right or of Michels' informing him of the *Miranda* rights as evidence of guilt.

■ We conclude the trial court did not abuse its discretion in refusing to grant Asbridge's motions for a mistrial.

### III

At trial, Asbridge attempted to read sworn deposition testimony of Rash given in a different criminal case pertaining to his qualifications and experience as a toxicologist. Rash admitted in the deposition that he was neither trained nor board certified as a toxicologist. Upon the prosecutor's objection, the trial court excluded the testimony "on the grounds of relevancy and objections that this is not a statement or a deposition made for this case and that the State's Attorney has had no opportunity to be there and question Mr. Rash or to be present while this statement was made." Asbridge asserts the trial court erred in excluding this evidence.

■ Deposition testimony of a non-party witness from another lawsuit is hearsay subject to exclusion upon proper objection. *See Williston Co-op. Credit Union v. Fossum,* 427 N.W.2d 804 (N.D.1988); N.D.R.Ev. 801. Asbridge asserts Rash's deposition testimony qualifies as an admission by a party-opponent, which is not hearsay under N.D.R.Ev. 801(d)(2):

"(d) *Statements which are not hearsay.* A statement is not hearsay if:

* * * * * *

"(2) *Admission by party-opponent.* The statement is offered against a party and is (I) the party's own statement, in either an individual or a representative capacity, (ii) a statement of which the party has manifested an adoption or belief in its truth, (iii) a statement by a person authorized by the party to make a statement concerning the subject, (iv) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (v) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

Asbridge contends Rash is an agent of the State, the testimony given was within the scope of his employment, and the statements were made during the existence of the relationship, thus making the deposition testimony admissible.

■ Even if Rash were considered an agent or servant of the State for purposes of N.D.R.Ev. 801(d)(2), his deposition testimony would nevertheless be inadmissible in this case. North Dakota's Rule 801(d)(2) is substantively identical to Fed.R.Ev. 801(d)(2). In *United States v. Kampiles,* 609 F.2d 1233, 1246 (7th Cir.1979), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980) (footnote omitted), the United States Court

of Appeals for the Seventh Circuit explained why, in criminal prosecutions, government employees generally are not considered agents or servants of a party-opponent for purposes of the admissions rule:

> "Prior to adoption of the Federal Rules of Evidence, admissions by government employees in criminal cases were viewed as outside the admissions exception to the hearsay rule. *United States v. Powers,* 467 F.2d 1089, 1095 (7th Cir.1972). Because the agents of the Government are supposedly disinterested in the outcome of a trial and are traditionally unable to bind the sovereign (*United States v. Santos,* 372 F.2d 177, 180 (2d Cir.1967)), their statements seem less the product of the adversary process and hence less appropriately described as admissions of a party. Nothing in the Federal Rules of Evidence suggests an intention to alter the traditional rule and defendant has cited no truly contrary case indicating such a trend."

*See also United States v. Pandilidis,* 524 F.2d 644 (6th Cir.1975), *cert. denied,* 424 U.S. 933, 96 S.Ct. 1146, 47 L.Ed.2d 340 (1976); *People v. McDaniel,* 164 Ill.2d 173, 207 Ill. Dec. 304, 647 N.E.2d 266 (1995); *State v. Therriault,* 485 A.2d 986 (Me.1984); 2 J. Strong, *McCormick on Evidence,* § 259, at pp. 168–169 (4th ed. 1992) [*McCormick*]. Although there appears to be some disagreement among the courts over the admissibility of statements by government attorneys after the initiation of proceedings, it appears fairly well-settled that statements by government agents at the investigative level are not admissible under Rule 801(d)(2). *See McCormick* § 259, at p. 169. In this case, Rash would be considered an agent of the State at the investigative level.

We conclude the trial court did not abuse its discretion in refusing to admit hearsay evidence of Rash's deposition testimony given in another criminal case.

### IV

Asbridge asserts the trial court erred in overruling his objections to the court's reasonable-doubt instruction. The trial court gave a North Dakota pattern jury instruction on proof beyond a reasonable doubt, N.D.J.I.Crim. No. 2002 (1995). Asbridge asserts the "all doubt" and "firm and abiding conviction" language of the instruction is confusing and does not convey the constitutionally required standard.

 In *State v. Schneider,* 550 N.W.2d 405 (N.D.1996), we recently rejected identical arguments and held this pattern jury instruction, taken as a whole, correctly conveyed the concept of reasonable doubt to the jury. We likewise conclude the instructions in this case informed the jury of the law, without misleading or confusing the jury. The trial court did not err in overruling Asbridge's objections to the instruction.

We affirm the criminal judgment.

SANDSTROM, NEUMANN, MARING, and MESCHKE, JJ., concur.