2008 ND 200

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Joshua Earl TROUT, Defendant and Appellant.**

No. 20080079.

Supreme Court of North Dakota.

Nov. 19, 2008.

Tyrone J. Turner, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Christopher G. Lindblad, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Joshua Trout appealed from a criminal judgment and an amended criminal judgment entered upon a jury verdict finding him guilty of indecent exposure. On appeal, Joshua Trout argues evidence of prior bad acts introduced at trial was unduly prejudicial, and asks this Court to reverse his conviction. We affirm, holding the evidence was not unduly prejudicial, and there was sufficient, independent evidence from which the jury could have reached the same verdict.

I.

[¶ 2] According to Joshua Trout, the first time he met B.M. was in the courtroom where he stood trial for indecent exposure in October of 2007. B.M., however, asserted she met Joshua Trout over two years earlier, and testified to the following events:

[¶ 3] In July of 2005, B.M. was a ten-year old girl living with her mother in an apartment complex in northern Bismarck. On July 29, in an effort to earn extra spending money, B.M. decided to canvas her neighborhood and offer to clean apartments. That afternoon, B.M. ventured into a nearby apartment building, and

knocked on Joshua Trout's door. Joshua Trout agreed to pay B.M. to wash his windows, told her he was going to the back room to take a nap, and asked her to wake him up when she was finished. After she had completed cleaning, B.M. testified she entered the bedroom, where she found Joshua Trout lying on a mattress on the floor, with his eyes closed and his penis hanging from an opening in his boxer shorts. Upon opening his eyes, Joshua Trout apologized for the exposure, paid ten dollars for her cleaning, and B.M. left the apartment. Shortly thereafter, B.M. was scouring the neighborhood for more cleaning jobs, when Joshua Trout pulled up next to her in a black sports utility vehicle with South Carolina license plates. Joshua Trout offered 20 dollars for B.M. to return to his apartment and continue cleaning. B.M. accompanied him back to the apartment, where she cleaned the bathroom and kitchen before asking if she could check her e-mail on his computer. B.M. testified that, while she was at the computer, Joshua Trout passed her a note which said, "I'll give you $20 if you do something to me with your hand." B.M. handed Joshua Trout back the note and asked to leave. Joshua Trout told her she could, but asked her not to tell anyone what happened, because he would get in trouble.

[¶ 4] That evening, B.M. described these events to her family, who took her to the Bismarck Police Department to file a report. After an initial report was made to Officer Steve Scheuer, Detective Mark Gaddis commenced the official police investigation into the matter. On August 10, Detective Gaddis interviewed Joshua Trout, who denied that B.M. had ever been in his apartment. Detective Gaddis examined Joshua Trout's apartment, and took a series of photographs of the apartment's layout and its sparsely-decorated rooms. On August 11, Detective Gaddis interviewed B.M. and had her draw a diagram of Joshua Trout's apartment. Detective Gaddis testified the diagram was a generally accurate depiction of the apartment he had documented, except that B.M. had transposed the locations of the living room and kitchen, and that, while B.M. had placed the mattress in the bedroom on her diagram, the mattress was located in the living room when Detective Gaddis took photographs. Detective Gaddis testified there were several other details B.M. got right about the apartment, including the type and location of Joshua Trout's computer, the layout of the bedroom, that Joshua Trout owned a black sports utility vehicle, and that Joshua Trout was from South Carolina. Joshua Trout testified he had "[n]o explanation" for how B.M. could have accurately described the interior of his apartment.

[¶ 5] Joshua Trout was subsequently charged with a class A misdemeanor for indecent exposure. Prior to trial, the State provided notice to the district court that, out of anticipation Joshua Trout may claim he accidentally exposed his penis, it intended to introduce testimony from other witnesses to whom Joshua Trout allegedly exposed himself and claimed it was an accident. Joshua Trout responded he would not be claiming accident, and the court ruled the prior bad acts would be inadmissible unless the issue of accident was broached by the defendant during trial. At trial, Detective Gaddis testified during direct examination on his initial course of action after receiving Officer Scheuer's report. Detective Gaddis stated, "Due to some other information that Officer Scheuer had gotten, I decided to contact Joshua Trout's employer to check up on another incident that occurred in his building." Following an immediate bench conference, the contents of which are not

in the record, the trial judge addressed the jury:

> Members of the jury, Officer Gaddis made a reference to another incident, that incident is not relevant to the case at hand. You are to ignore that reference and I realize it's asking you to put out of your mind something you've already heard but in terms of your deliberations in this case, you are to act as if that comment was never made.

[¶ 6] At the trial's conclusion, the jury returned with a verdict of guilty. Joshua Trout was sentenced to one year in prison with nine months suspended, and two additional years of probation. He was also required to register as a sex offender.

## II.

[¶ 7] Evidence of other crimes, wrongs, or acts is not admissible to prove a person acted in conformity therewith. N.D.R.Ev. 404(b). However, such evidence may be admissible for other relevant purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Therefore, evidence of any prior crimes, wrongs, or acts committed by Joshua Trout would be generally inadmissible at trial except for such "other purposes" as enumerated in our Rules of Evidence.

[¶ 8] However, the introduction of prior bad acts evidence will warrant a reversal of conviction only if the admitted testimony is so prejudicial that substantial injury occurred, and a different decision would have resulted had the error not been made. *State v. Thompson*, 552 N.W.2d 386, 390 (N.D.1996); *see also State v. Micko*, 393 N.W.2d 741, 746 (N.D.1986) ("Not every error is prejudicial, however, and unless the mistake had some effect on the jury's verdict, the conviction will stand."). If independent evidence exists which could lead the trier of fact to the same result, we consider the admission of

prior bad acts to be harmless error. *See State v. Stewart*, 2006 ND 39, ¶ 17, 710 N.W.2d 403 (holding as harmless error the admission of prior bad acts evidence, even though the State failed to notify the defendant of its introduction prior to trial). A harmless error is an error at trial which does not affect a person's substantial rights, and must be disregarded. N.D.R.Crim.P. 52(a).

[¶ 9] We begin by noting there is no motion for mistrial in the record, nor any discernible effort by Joshua Trout to reconstruct in the transcript what occurred during the bench conference following the testimony at issue. Under N.D.R.App.P. 10(b)(1)(C), the appellant has the duty to provide a complete transcript, absent a stipulation by all parties specifying portions not required for the appeal. However, regardless of whether defense counsel requested a mistrial during the bench conference, or whether there was any such motion at all during the proceeding, we have looked at the evidence in the light most favorable to Joshua Trout, and hold the introduction of the evidence was not unduly prejudicial.

[¶ 10] In his testimony, Detective Gaddis generally referred to "some other information" obtained by police, and that he had decided to contact Joshua Trout's employer to "check up on another incident that occurred in his building." On its face, Detective Gaddis' comment betrays no specific fact or information regarding a prior bad act, and is too vague to be unduly prejudicial to Joshua Trout's substantive rights. The lack of undue prejudice is compounded by the amount of independent evidence from which the jury could find Joshua Trout guilty, including the testimony of B.M. about the particulars of her encounter with Joshua Trout, B.M.'s ability to describe—with a good deal of accuracy—the layout and details of Joshua Trout's apartment, B.M.'s identifi-

cation of Joshua Trout's vehicle with South Carolina license plates, Detective Gaddis' testimony about his investigation, and Joshua Trout's inability to attempt an explanation at how B.M. could describe his apartment if she had not been there.

[¶ 11] Furthermore, even if Detective Gaddis' vague statement could be classified as evidence of prior bad acts, the trial judge immediately issued a curative instruction to the jury after the statement was made on the stand. Juries are generally presumed to follow instructions made by the court, and the issuance of a curative instruction to disregard certain evidence is generally sufficient to remove the threat of prejudice to the defendant. *State v. Skarsgard*, 2007 ND 160, ¶ 16, 739 N.W.2d 786. In *State v. Asbridge*, 555 N.W.2d 571 (N.D.1996), a highway patrol officer giving testimony at trial violated a pretrial order prohibiting evidence regarding the defendant's invocation of his right to counsel. *Id.* at 574. This Court noted the comment was an "isolated incident" promptly followed by a curative instruction, and held the trial court did not abuse its discretion when it denied the defendant's motion for a mistrial. *Id.* at 575. In this case, Detective Gaddis' statement was also an isolated incident which prompted the immediate issuance of a curative instruction by the trial judge. No evidence has been produced, or suggested, to rebut the presumption that this jury followed the judge's instruction.

[¶ 12] The criminal judgment and amended criminal judgment are affirmed.

[¶ 13] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.