Filed 7/26/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 157

Cornell Kilber, a/k/a Cornel Kilber, Plaintiff and Appellant

v.

Grand Forks Public School District, Defendant and Appellee

No. 20110178

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Lawrence E. Jahnke, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Michael J. Geiermann, P.O. Box 2196, Bismarck, N.D. 58502-2196, for plaintiff and appellant.

Tiffany Lynn Johnson (argued), and Gary R. Thune (on brief), P.O. Box 400, Bismarck, N.D. 58502-0400, for defendant and appellee.

Kilber v. Grand Forks Public School District

No. 20110178

Maring, Justice.

[¶1] Cornel Kilber appeals from a district court judgment affirming the Grand Forks Public School District No. 1 (“District”) decision discharging him from his teaching position with the District for conduct unbecoming the position of a teacher.  We conclude that Kilber was not denied a fair discharge hearing and that any claimed procedural errors that occurred during the hearing were harmless.  We affirm.

I

[¶2] Kilber began his employment as a teacher with the District in 1992.  During the 2010-2011 school year, Kilber was employed as a technology educator.  In September 2010, the Grand Forks School Board voted to contemplate discharging Kilber from his 2010-2011 teaching contract.  A hearing was scheduled for October 2010, an administrative law judge (“ALJ”) was appointed to preside over the hearing, and a list of charges was provided to Kilber on October 1, 2010.  

[¶3] On October 7, 2010, the District held an executive session hearing, and the District presented evidence in support of its reasons for Kilber’s discharge, including testimony from 13 witnesses and various exhibits.  After a statutory continuance requested by Kilber, the parties reconvened on October 14, 2010, and Kilber called seven witnesses to testify, and also testified on his own behalf.  Additional exhibits were also received into evidence.  At the conclusion of evidence and closing arguments, the ALJ closed the record and turned the matter over to the Board for deliberations to consider whether Kilber’s conduct constituted insubordination or conduct unbecoming a teacher.  After deliberations, a motion to discharge Kilber for insubordination failed.  The Board subsequently passed a motion, voting to discharge Kilber for conduct unbecoming his position as a teacher.

[¶4] In ordering the discharge of Kilber, on November 8, 2010, the District issued the following findings of fact and conclusions of law:

1. Cornel Kilber (Kilber) is employed by Grand Forks Public School District No. 1 as a teacher at Schroeder Middle School in Grand Forks, North Dakota for the 2010-11 school year.

2. Associate Principal Dr. Mary Koopman worked with Kilber for seven years, in an ongoing effort to help him improve. She noted in a Supervisory Self Evaluation report dated 3/11/05 that: “Mr. Kilber and I have discussed his need to continue to work on fostering positive relations with students.”

3. Former Principal Ken Schill testified that Kilber came out of his classroom on May 10, 2005, loudly saying, “to hell with all of you” to his Tech Ed class. Principal Schill testified that he remembered this incident because in his 40 years in education, he had never heard a teacher speak to his students in that way.

4. On September 15, 2006, Associate Principal Dr. Koopman documented the following event involving Kilber and an 8th grade student, [K.B.]:

—“Mr. Kilber informed her that she needed to lose weight and proceeded to talk about skinny Ethiopian women.”

—“I reiterated to him that making personal comments to a student in such a way was humiliating and that he had embarrassed her in front of her peers.”

—“Mr. Kilber expressed his remorse and asked if he should apologize to [K.B.].”

—“He stated that he was just ‘trying to be funny.’”

Associate Principal Dr. Koopman informed Kilber that: “Any further incidents of this nature will result in a formal reprimand that will be placed in his personnel file.”  Kilber said he did not remember receiving this document.  Dr. Koopman testified that she definitely remembered giving it to him.

5. Paraprofessional Judy Klaus testified she had to twice remove the special needs student she was tutoring from Kilber’s classroom on November 13, 2006, because he was demeaning to his students, including calling one student stupid.

6. In a Supervisory Report dated 3/21/07, it was noted that: “He will continue to work on his relationship with all of his students paying special attention to their adolescent needs.” 

7. [R.P.] testified to Kilber’s in-class statements in January of 2008, that all Muslims are terrorists.  After [R.P.] responded that some radical Muslims are terrorists, but not all Muslims, she testified that she was treated differently by Mr. Kilber, and not in a positive way.

8. On February 7, 2008, parents met with Associate Principal Dr. Mary Koopman to complain about Kilber’s verbal abuse of their son and requested that their son be removed from his class.  The next morning (February 8, 2008), Principal Ken Schill stopped Kilber from further verbally harassing this same student in front of other students and teachers in the school commons.  A letter of reprimand for this incident was issued by Dr. Koopman, based on Kilber’s negative action in the school commons.  Kilber sought to refute this incident because Principal Schill testified the incident occurred at noon, rather than in the morning, as noted by Dr. Koopman in a letter dated February 8, 2008.  In her letter of reprimand, Dr. Koopman also noted parental complaints that Kilber made inappropriate comments in anger to students that were humiliating because they occurred in front of other students.  Dr. Koopman also noted that staff members complained of Kilber’s negative treatment of students and staff at Schroeder Middle School.  

9. On February 8, 2008, Kilber was placed on an Improvement Plan which stated, in part:

“1. Mr. Kilber will develop positive relationships with students at Schroeder Middle School.

• Mr. Kilber will use appropriate language towards students.

• Mr. Kilber will show appropriate behavior towards students.

• Mr. Kilber will not single out, humiliate or berate students either one-on-one or in the presence of others.

• If a private consultation is needed with a student, Mr. Kilber will do so in the presence of another adult in the building.

2. Mr. Kilber will develop positive relationships with staff members at Schroeder Middle School.

• Mr. Kilber will be positive at all Team Meetings with his colleagues and in reference to students and other staff members at Schroeder.

• Mr. Kilber will treat other staff members, including paraprofessionals, respectfully and professionally.”

That Improvement Plan was not removed from Kilber’s personnel file.

10.  Kilber submitted a written response to the 2/8/08 Improvement Plan, stating:

“In regard to the second assumed verbal harassing in the school commons . . . I will admit, I am sorry this took place and wish it would have ended a minute sooner, but it is not the first time a student and a teacher have been seen in a disagreement.”

After making several other admissions, Kilber concluded by stating:

“I accept all the responsibilities listed in the improvement plan and will diligently work to fulfill each to the best of my ability.”

11. As documented in Exhibits A, B and D, Kilber made satisfactory progress from February 8, 2008 through March 15, 2010, which was readily acknowledged by Dr. Koopman.

12. On April 20, 2010, a sexual harassment complaint was filed against Kilber by an 8th grade student and her father.  After an extensive investigation, Kilber’s conduct was determined to “. . . not meet the definition of sexual harassment as stated in School Board Policy #4660.”  That same document noted:

—“It is my opinion that the actions the student described occurred and would fall within paragraph B.3 of the sexual harassment definition in School Board Policy #4660.”

—“Therefore it is my opinion that Mr. Kilber’s conduct and its effect, while illadvised considering his history of problems with student interactions, does not meet the definition of sexual harassment as stated in School Board Policy #4660.”

13. On August 12, 2010, in response to the sexual harassment complaint, a letter of reprimand was placed in Kilber’s personnel file which stated in part:

“Despite the finding, your behavior and actions were clearly unacceptable and will not be tolerated in the future.  Your failure to comply with the following directives may be deemed insubordination or conduct unbecoming a teacher, and could result in a recommendation to contemplate your immediate discharge:

1. Do not use language that is negative, demeaning, humiliating and/or insulting towards students, staff or parents.

2. Do not have any type of physical contact with students.

3. Do not inappropriately single out students for personal attention.

4. Do maintain a positive classroom environment where students feel comfortable.”

14. On August 12, 2010, Assistant Superintendent Jody Thompson, Principal Dr. Mary Koopman and Human Resources Manager Tracy Abentroth met with Kilber to explicitly discuss the Letter of Reprimand.  Kilber’s response to directives contained in that letter was that he can meet those—no problem.

15. Nineteen days later, on August 31, 2010, the fifth day of the new school year, the complaint of G.K. and her father was received.  In her 8th grade Tech Ed class, taught by Kilber, an incident occurred which is documented by Exhibits 8 through 12 and 14, as supported by the testimony of four 8th grade students (C.K., M.K., M.R. and G.K.) and G.K.’s father, David.  Kilber used an inappropriate example regarding bears and people.  One of the witnesses testified that, looking at G.K. (the only female African American in any of his six 8th grade Tech Ed classes), he referred to her as a “chocolate one” that bears would like to eat.  When asked if he used the phrase “chocolate one” in any of his other classes, he said he used chicken.  Kilber also acknowledged that he had no children of color in any of his other Tech Ed classes this school year.

16. On September 9, 2010, after investigating the August 31, 2010 incident, Assistant Superintendent Jody Thompson and Principal Dr. Mary Koopman issued a Memorandum to Superintendent Dr. Larry P. Nybladh recommending that Kilber be discharged for insubordination and conduct unbecoming a teacher.

17. At the October 7, 2010 executive session hearing, former Principal Ken Schill testified that it was his opinion Kilber should not be teaching anymore.

18. Dr. Mary Koopman testified:

“I simply cannot justify to myself, to parents, to students and staff anymore why he continues to be a teacher at my school.  I believe that his actions are emotionally damaging to my students and that he’s shown a pattern over the years of that damage, and that he’s unable or unwilling to correct the behavior. . . .  My recommendation is at the conclusion of this hearing that they discharge Mr. Kilber from his teaching duties.”

19. Assistant Superintendent Jody Thompson recommended that Mr. Kilber be discharged because:

“. . . I was very specific in my meeting with Mr. Kilber about what our expectations were to be moving forward and it was less than two weeks into the school year that he failed to meet three of the four expectations that were set out and, in my opinion, he has created a negative and hostile environment for students and shouldn’t be continued to teach.”

20. Witnesses testifying for Kilber included teachers, three former students, a paraprofessional and Kilber.  Two of the teachers also coached with Kilber.  The teachers, paraprofessional and the students spoke highly of Kilber’s teaching and had not observed inappropriate behavior on his part.

21. Kilber stated that he believed both Improvement Plans applied to him and stated proper expectations for his conduct as a teacher.  He also testified that he made satisfactory improvement under the February 8, 2008 Plan, as established by Exhibits A, B and D, his evaluations for 2008, 2009 and 2010.

22. Exhibits E, C and D were admitted into evidence during Kilber’s testimony.

23. At the conclusion of Kilber’s testimony, his legal counsel rested and legal counsel for the District elected to not call any rebuttal witnesses.  Attorneys Thune and Geiermann presented closing arguments and Thune presented a brief rebuttal argument.  The two nights of hearing lasted approximately 13½ hours.

(Citations to record omitted.)  Based on these factual findings, the District adopted the conclusions of law:

1. Cornel Kilber holds a contract as a teacher at Schroeder Middle School in Grand Forks Public School District No. 1 for the 2010-11 school year.

2. All procedural steps required by law for the Board to consider the dismissal of Kilber for cause have been duly taken.

3. The evidence presented by the Administration in support of the cause of insubordination was limited to a single event which occurred on August 31, 2010 and was found to be insufficient to establish insubordination as a ground for discharge, by a Board vote of 8 to 1.

4. The evidence presented by the Administration, including Exhibits 1 through 14 and the testimony of Dr. Mary Koopman, Ken Schill, [J.S.], [K.B.], Judy Klaus, [R.P.], C.K., M.K., M.R., G.K., David K., Judy Anderson and Jody Thompson, was credible and sufficient to establish a pattern of conduct unbecoming Kilber’s position as a middle school teacher, and was not refuted by the evidence presented by the teacher, including Exhibits A through E and the testimony of Troy Bazey, [T.R.], Justin Johnson, Jan Monley, [G.P.], Thomia Lundby, [T.H.] and Cornel Kilber, as confirmed by an 8 to 1 vote of the Board.

5. Pursuant to Section 15.1-15-07(4) of the North Dakota Century Code, conduct unbecoming Kilber’s position as a middle school teacher is cause for dismissing a public school teacher prior to the expiration of his contract.

[¶5] Kilber appealed his discharge to the district court, which affirmed the District’s findings of fact and conclusions of law and the decision to discharge Kilber.

II

[¶6] Generally, N.D.C.C. § 15.1-15-07 authorizes a school board to “dismiss an individual employed as a teacher . . . prior to the expiration of the individual’s contract for any of the following causes: . . . 2. Insubordination. . . . 4. Conduct unbecoming the position held by the individual.”  Section 15.1-15-08, N.D.C.C., governs the proceedings for a Board to discharge a teacher for cause from employment during the school year.  Further, N.D.C.C. § 15.1-15-08(1) requires appointing an administrative law judge and publishing notice of the hearing:

If the board of a school district contemplates the discharge for cause of an individual employed as a teacher . . . before the expiration of the individual’s contract, the board shall petition the director of the office of administrative hearings for appointment of an administrative law judge to preside over the hearing.  The administrative law judge shall set the time and place of the hearing, direct the board to publish notice of the hearing, and direct the board to provide to the individual a list of charges at least five days before the hearing.

Section 15.1-15-08(2), N.D.C.C., provides that “[e]xcept as otherwise provided in this section, the hearing must be conducted in accordance with chapter 28-32.”  “At the conclusion of the hearing, the administrative law judge shall provide all evidence presented at the hearing to the board in order that the board may make a determination regarding the discharge.”  N.D.C.C. § 15.1-15-08(6).  Under N.D.C.C. § 15.1-15-

08(7), “[a] determination of the board under this section may be appealed to the district court.”

III

[¶7] On appeal, Kilber argues the district court applied an incorrect standard of review under N.D.C.C. ch. 28-34, governing appeals from local governing bodies.  Kilber contends that former section N.D.C.C. § 15-47-38 required all procedures regarding evidence, subpoenas, witnesses, decisions, appeals, and other administrative procedures to be conducted under N.D.C.C. ch. 28-32.  In 2001, the legislature repealed this statute and others dealing with teacher’s rights and reenacted them into N.D.C.C. tit. 15.1, with teachers’ continuing contract rights, nonrenewal, and discharge proceedings in N.D.C.C. ch. 15.1-15.  
See
 2001 N.D. Sess. Laws ch. 181, § 3.  Kilber argues no substantive change was intended, and this appeal should be governed under N.D.C.C. ch. 28-32, rather than N.D.C.C. ch. 28-34.

[¶8] The District argues, however, the Board’s decision should be reviewed under N.D.C.C. ch. 28-34, which applies to appeals from local governing bodies and includes “any officer, board, commission, resource or conservation district, or other political subdivision.”  
See
 N.D.C.C. § 28-34-01.  The District argues school districts are not subsets of the executive branch or administrative agencies, but are political subdivisions created by the legislature and recognized by the North Dakota Constitution.  
See
 N.D. Const. art. VIII, § 2, and art. X, § 15; 
Baldwin v. Board of Educ. of City of Fargo
, 33 N.W.2d 473, 481-82 (N.D. 1948).  The District maintains that after the legislature moved N.D.C.C. § 15-47-38 into N.D.C.C. ch. 15.1-15 in 2001, and removed language regarding appeals, the legislature then amended N.D.C.C. § 15.1-15-08 in 2009, to add the provision that the Board’s decision could be appealed to the district court.  
See
 2009 N.D. Sess. Laws ch. 172, § 1.  The District contends the legislature’s “rejection” of language specifically requiring appeals be governed under N.D.C.C. ch. 28-32 indicates appeals are governed under N.D.C.C. ch. 28-34.

[¶9] Although former N.D.C.C. § 15-47-38 allowed for appeals to be reviewed under N.D.C.C. ch. 28-32, that specific language is not part of N.D.C.C. § 15.1-15-08, which states the hearing must comply with N.D.C.C. ch. 28-32.  Under N.D.C.C. ch. 28-32, the Administrative Agencies Practice Act, courts exercise “limited review” in appeals from administrative agency decisions.  
See
 
Sloan v. North Dakota Workforce Safety & Ins.
, 2011 ND 194, ¶ 4, 804 N.W.2d 184.  Under N.D.C.C. § 28-32-46, a district court must affirm a decision unless one of eight factors is present.  
See, e.g.
, N.D.C.C. § 28-32-46(1) (“The order is not in accordance with the law.”), (2) (“The order is in violation of the constitutional rights of the appellant.”), (3) (“The provisions of this chapter have not been complied with in the proceedings before the agency.”), (4) (“The rules or procedure of the agency have not afforded the appellant a fair hearing.”).  On appeal from the district court, this Court reviews the decision in the same manner as the district court.  N.D.C.C. § 28-32-49.  Although this Court gives deference to factual findings under N.D.C.C. ch. 28-32, that is, whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record, we do not give deference to legal conclusions, and questions of law including statutory interpretation are fully reviewable.  
Sloan
, at ¶ 5.

[¶10] Likewise, under N.D.C.C. ch. 28-34, this Court’s scope of review of a local governing body is also “very limited.”  N.D.C.C. § 28-34-01; 
Gowan v. Ward Cnty. Comm’n
, 2009 ND 72, ¶ 5, 764 N.W.2d 425.  The local governing body’s decision must be affirmed unless the local body acted arbitrarily, capriciously, or unreasonably, or there is not substantial evidence supporting the decision.  
Id.
  “A decision is not arbitrary, capricious, or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation.”  
Tibert v. City of Minto
, 2006 ND 189, ¶ 8, 720 N.W.2d 921.  Additionally, “[w]e fully review the interpretation of an ordinance, and 
a governing body’s failure to correctly interpret and apply controlling law constitutes arbitrary, capricious, and unreasonable conduct
.”  
Hentz v. Elma Twp. Bd. of Supervisors
, 2007 ND 19, ¶ 4, 727 N.W.2d 276 (quotations omitted) (emphasis added).

[¶11] Here, the main issues presented for our review concern whether Kilber received a “fair hearing” under the governing statutory provisions for the Board’s proceedings to discharge him.  We have said that an argument implicating a due process issue presents a question of law, which is fully reviewable on appeal.  
Cf.
 
State v. Schmidt
, 2012 ND 120, ¶ 8 (citing 
State v. Burr
, 1999 ND 143, ¶ 9, 598 N.W.2d 147).  Thus, whether Kilber received a fair hearing necessarily presents a question of law under either N.D.C.C. ch. 28-32 or ch. 28-34.  We therefore conclude we need not decide which chapter applies in this case.

IV

[¶12] Kilber argues that he was denied a fair hearing because: 1) a school board member conducted an “independent investigation” of some allegations and obtained documents from the District administration that were not introduced into evidence; 2) a school board member discussed evidence of ex parte communications she had with a parent outside of the hearing; and 3) there was improper cross-examination of Kilber on items outside of the record, which were included in a “secret personnel file” which was introduced at the hearing.  Kilber contends these incidents violated specific statutory procedures under N.D.C.C. ch. 28-32.

[¶13] Kilber further argues ex parte communications are forbidden by “agency heads” under N.D.C.C. § 28-32-37, that N.D.C.C. § 28-32-25 provides parameters for introducing evidence, and that Kilber was denied the ability to cross-examine the witness who had spoken with the Board member, violating § 28-32-24(5).  Kilber also argues that eight of the specific allegations in the list of charges were not substantiated by documents placed in his personnel file and that materials outside the scope of the hearing notice were introduced, in particular during cross-examination by the Board’s counsel.  Kilber contends these procedural violations during the hearing evidence a “systemic disregard of the law” and require his reinstatement.

[¶14] As discussed, N.D.C.C. § 15.1-15-08(2) provides that a teacher discharge hearing must be conducted under N.D.C.C. ch. 28-32.  Section 15.1-15-08(6), N.D.C.C., requires the ALJ to provide all evidence presented at the hearing to the Board for the Board to make its decision regarding discharge.  This subsection thus provides a clear inference that the evidence to be considered by the Board must be presented at the discharge hearing.

[¶15] Section 28-32-24(1), N.D.C.C., explicitly requires the North Dakota Rules of Evidence govern admissibility of evidence in the hearing.  
See
 N.D.C.C. § 28-32-

24(5) (“All testimony must be made under oath or affirmation.  Relevant statements presented by nonparties may be received as evidence if all parties are given an opportunity to cross-examine the nonparty witness or to otherwise challenge or rebut the statements.”); 
Hendrickson v. Olson
, 2009 ND 16, ¶¶ 14-15, 760 N.W.2d 116; 
Madison v. North Dakota Dep’t of Transp.
, 503 N.W.2d 243, 246 (N.D. 1993) (“[T]he Rules of Evidence are to be the norm in administrative practice, and . . . any deviation from that norm must be carefully considered and explained.”).  Further, N.D.C.C. § 28-32-25 states in part that “[i]n any adjudicative proceeding, an administrative agency may avail itself of competent and relevant information or evidence in its possession or furnished by members of its staff, or secured from any person in the course of an independent investigation conducted by the agency, in addition to the evidence presented at the hearing.”  However, this section also provides specific safeguards for considering evidence not presented at the hearing, including transmitting copies to the parties, cross-examinations, and further hearing.

[¶16] Section 28-32-37(1), N.D.C.C., governs ex parte communications:

1. Except as provided in subsections 2 and 4 or unless required for the disposition of ex parte matters specifically authorized by another statute, an agency head or hearing officer in an adjudicative proceeding may not communicate, directly or indirectly, regarding any issue in the proceeding, while the proceeding is pending, with any party, with any person who has a direct or indirect interest in the outcome of the proceeding, with any other person allowed to participate in the proceeding, or with any person who presided at a previous stage of the proceeding, without notice and opportunity for all parties to participate in the communication.

. . . .

9. Nothing in this section prohibits a member of the general public, not acting on behalf or at the request of any party, from communicating with an agency in cases of general interest. The agency shall disclose such written communications in adjudicative proceedings.

Under N.D.C.C. § 28-32-31, the ALJ must assure proper notice has been given, must conduct only hearings and related proceedings for which proper notice has been given, and must assure “all hearings and related proceedings are conducted in a fair and impartial manner.”  
See, e.g.
,  N.D.C.C. § 28-32-31(1)-(3).

[¶17] Regarding procedural violations, this Court has said due process “requires a person be given notice and an opportunity to be heard before the government deprives the person of property.”  
Wahl v. Morton Cnty. Soc. Servs.
, 1998 ND 48, ¶ 6, 574 N.W.2d 859.  “[D]ue process is flexible and must be analyzed on a case-by-case basis, balancing the competing interests and assessing whether the basic due process requirement of fairness has been satisfied.”  
Id.
  Due process requires a participant in a proceeding “be given notice of the general nature of the questions to be heard and an opportunity to prepare and be heard on those questions, and notice is adequate if it apprises the party of the nature of the proceedings so there is no unfair surprise.”  
Id.
 at ¶ 8.  Generally, however, to provide redress for a procedural violation, a party  must demonstrate prejudice or harm.  
See
 
id.
 at ¶¶ 6, 8.

[¶18] We have also explained that “[w]hen ‘systemic disregard of law’ by a governmental agency becomes evident, a court may reverse a decision in favor of the government to prophylactically ensure that the government ‘acts consistently and predictably in accordance with the law.’”  
Greenwood v. Moore
, 545 N.W.2d 790,  793 (N.D. 1996) (quoting 
Madison
, 503 N.W.2d at 246-47); 
see, e.g.
, 
Scott v. North Dakota Workers Comp. Bureau
, 1998 ND 221, ¶¶ 10-22, 587 N.W.2d 153 (ex parte contacts between Bureau’s outside counsel and claims director were “institutional noncompliance” constituting “systemic disregard of law”); 
Elshaug v. North Dakota Workers Comp. Bureau
, 2000 ND 42, ¶¶ 8-9, 607 N.W.2d 568 (ex parte contacts no less egregious than in 
Scott
).  However, a party must show “more than a ‘single miscue’ by the government . . . to evidence the institutional noncompliance that amounts to ‘systemic disregard of law.’”  
Greenwood
, at 793.

A

[¶19] Kilber asserts that he was denied a fair hearing based on conduct by school board members Cynthia Shabb and Vicki Ericson.

[¶20] During the continued hearing on October 14, 2010, school board member Shabb, in questioning Kilber, indicated she had been approached by the parent of one of Kilber’s former students:

CYNTHIA SHABB:  Okay. So, you know, in my humble opinion of a lot of these things, I have a problem with some of the responses that I’ve heard.

And I’m going to tell you that, out of the blue today, after having it in the paper yesterday, someone said to me that she recalled an incident with her daughter when her daughter was in eighth grade taking classes from you.  

And I’m not going to tell you because that would be out of scope, but it—it’s clear to me, in—in these cases where the students have spoken, that it has upset the students.

And in today’s interaction with this mother, she still remembered the incident that had occurred.  She did not make a formal complaint.  So she was telling me that there were probably others that didn’t make a formal complaint.  

And, you know, I feel that some of your improvement plan didn’t really help, because I don’t believe—and I actually came and read your personnel file because it’s public record. 

I don’t believe that “Developing Capable People”, “Practical Ideas That Really Work”, “Shaping Self Concepts”, and “Seven Habits of Highly Effective Teens” are really going to help you in terms of being sensitive to weight and race. I—

ALJ BAILEY: Ms.—

MR. GEIERMANN: I object.

After Kilber’s attorney objected to Shabb’s examination of Kilber and made a record of his objection, the ALJ gave the Board the following instructions:

ALJ BAILEY:  Okay.  When I was interrupting the school board member, I was going to instruct that you ask a question and reserve comments for deliberations.

Secondly, and I agree that—I agree and disagree to some extent with Mr. Geiermann’s comments.  I do agree that you cannot and— well, you should not and cannot rely on any—any information that you’ve received outside of the record, you can’t rely on that in your decision-making process.

However, I disagree with him to the extent that I think, when it’s so instructed, that you should be able to discriminate and ignore that information and—and decide fairly and exercise your duties fairly.  And I think that the reason—this is unique, Mr. Geiermann, and you can make more of a record, is that this is a school board, and they don’t operate in a vacuum, and people in the public can approach them, call them, e-mail them, any time, all the time about anything they want.  

And—and so it’s not—I—I would never recommend that she excuse herself from the deliberation process just because she’s been approached and talked to, especially in light of the fact that now everybody’s gotten the instruction that anything you heard outside of the record, which is what has been presented here, you can’t rely on that in your decision-making process.

[¶21] During its special meeting in executive session, which followed the ALJ’s closing of the evidentiary hearing, the Board deliberated on the charges against Kilber, and the following exchange occurred between Ericson and Board president Eric Lunn:

VICKI ERICSON:  You know, I have a great deal of respect for our administration, but I think that the information that—that we have seen, in addition to some additional information that I was able to receive from Tracy, indicates that there are some real questions regarding the documentation in this case.  And I think that that causes a great deal of concern.  

You know, there’s a lot of documentation that indicates that we have a long-term teacher that has been very good in the classroom and has done—done some quality things in our—in our school district.

And we have some dates that are indicated on this list of charges that are documented differently in supervisory reports.

And I’m concerned, from a legal standpoint, as to what we’re opening up by making—taking action when we maybe don’t have all of our ducks in a row.

ERIC LUNN: I have a couple questions or a couple of comments. One is, is you said you got information from Tracy?

VICKI ERICSON: Correct. 

ERIC LUNN: Okay. We can only look at the evidence that was presented to us during these last 15 hours and 15 minutes.  So we cannot look at evidence that was brought in anywhere else.  It’s certainly not fair to Mr. Kilber to be talking about if you have evidence from elsewhere that was brought in.

That’s not—so I guess I’m—the one question I have to ask, can you expound upon the evidence, or will that poison all of us?

UNIDENTIFIED MALE SPEAKER: That will poison all of us.

UNIDENTIFIED SPEAKER: That will poison all of us.

(Multiple speakers; inaudible conversation.)

UNIDENTIFIED MALE SPEAKER: That’s the second time tonight.

ERIC LUNN: And—and the other thing, the other issue, is we have to look at the evidence with regards to Mr. Kilber.

We’re not here to look at school policy or—or those kinds of things. That’s for open meetings.  And—and if we have to look at how our policies are, we may have to look at that, but that’s not what our charge is tonight in executive session.

VICKI ERICSON: And this has nothing to do with policy. These are actual statements that dispute on 5/10/05 that—or on 3/10/05 that— 

MR. THUNE: I might point out, it appears to me that we’re going to double pollute our hearing.

UNIDENTIFIED MALE SPEAKER: Yeah, we are.

VICKI ERICSON: Well, I don't know why these documents were not admitted.

UNIDENTIFIED MALE SPEAKER: Well, that was— 

ERIC LUNN: Well, that was—that was the—that was the option the attorneys have in this case. I mean, Mr. Thune and Mr. Geiermann have the option to introduce whatever evidence they want.

I think if they don’t introduce evidence, I—I personally, and none of us personally, have the option to go out and look for further evidence.

Shortly after this exchange, another Board member made the following comment:

BECCA GRANDSTRAND: I would like to request that, please, I mean we’ve already gone, like, way out of where we’re supposed to be going with this.  The evidence that’s been presented, we should only be considering what came from these two attorneys and from the witnesses that we saw.

If you have something else, just keep it out of your mind, keep it out of the room. Like I really—we really don’t need to open this can of worms and it really is just polluting all of our discussion and all that we’ve already heard.

So I think we should just discuss what we all have heard together sitting in this room and let that be that.

UNIDENTIFIED MALE SPEAKER: Second.

Later, during the same meeting, President Lunn gave the Board the following admonition:

I would admonish everybody that if you’ve heard something, if you’ve read something, if you’ve seen something, you have to disregard it.  What was—what was put here as evidence, what’s in the documents is what we have to decide on.  And it’s not going to be easy for any of us, including you two or the rest of us.

[¶22] First, Kilber argues he was denied a fair hearing due to the ex parte communications between Shabb and a school district patron in a grocery store, in which the patron relayed information to Shabb regarding Kilber.  Kilber also contends Shabb reviewed Kilber’s personnel file, which had not been entered in total into the record.  Next, Kilber argues that board member Ericson violated N.D.C.C. § 28-32-37(1) when she conducted an independent investigation of the facts and circumstances concerning Kilber’s discharge and was in contact with the Grand Forks school district human resources director to obtain records not produced during the hearing.

[¶23] In response, the District maintains any procedural errors were harmless because “overwhelming” evidence was presented demonstrating Kilber could not provide his students with an appropriate learning environment based on the pattern of his inappropriate conduct.  The District contends the Board did not have improper ex parte communications in violation of N.D.C.C. § 28-32-37 because the Board member did not seek out the parent and it was a matter of “general interest.”  The District also argues Kilber was not prejudiced by the two Board members’ actions.

[¶24] This Court has previously acknowledged that school board members do not operate in a vacuum.  Instructively, in 
Opdahl v. Zeeland Public School Dist. No. 4
, 512 N.W.2d 444, 447 (N.D. 1994), this Court addressed a teacher’s argument involving nonrenewal proceedings under prior law that “any preexisting knowledge or judgment about the merits of a nonrenewal would require dismissal of the nonrenewal proceeding.”  This Court stated:

That result is not conducive to a school board’s authority to supervise schools, N.D.C.C. § 15-29-07, and to “contract with, employ, and pay all teachers in the schools and, for cause, to dismiss or suspend any teacher when the interests of the school may require it.” N.D.C.C. § 15-29-08(10).  In order to properly execute those responsibilities, 
school board members cannot operate schools in a vacuum and must be aware of the abilities and performances of personnel in their districts
, which necessarily includes some preexisting knowledge and judgment about the personnel.  Preexisting knowledge and judgment about a teacher do not necessarily constitute a disqualifying bias and do not mean board members’ minds are irrevocably closed on a subject.  Instead, 
board members are presumed to regularly perform their official duties
.  N.D.C.C. § 31-11-03(15); 
Froysland v. North Dakota Workers Compensation Bureau
, 432 N.W.2d 883 (N.D.1988); 
[First Am. Bank & Trust Co. v.] Ellwein[
, 221 N.W.2d 509 (N.D. 1974)]; 
see
 
Danroth [v. Mandaree Pub. Sch. Dist. No. 36
, 320 N.W.2d 780 (N.D. 1982)].

Opdahl
, 512 N.W.2d at 447 (emphasis added).  Additionally, in the context of jury trials, we have recognized that a judge’s curative or cautionary instructions are presumed to be followed by a jury and may remedy errors that are not incurably prejudicial.  
Cf.
 
State v. Gibbs
, 2009 ND 44, ¶ 21, 763 N.W.2d 430; 
State v. Trout
, 2008 ND 200, ¶ 11, 757 N.W.2d 556 (“issuance of a curative instruction to disregard certain evidence is generally sufficient to remove the threat of prejudice”).

[¶25] Based on our review of the proceedings, it does appear Board members Shabb and Ericson had certain ex parte communications and access to information regarding Kilber that were not introduced into evidence at the hearing.  However, both the ALJ during the hearing and the Board president during the special meeting gave instructions and admonishments to the Board that they were only to consider the record presented during the evidentiary hearing.  Even if the ex parte communication violated N.D.C.C. § 28-32-37 and did not fall within “general interest” communication contemplated under N.D.C.C. § 28-32-37(9), we conclude that Kilber has not established that he was prejudiced by the violations, in that as a result of the conduct of Shabb and Ericson the outcome of the proceedings would have been different.

[¶26] There were 21 witnesses and various documents presented as evidence and considered by the Board in reaching its findings of fact and conclusions of law.  We note that, despite the procedural irregularities during the hearing, Kilber did not move for the disqualification of either Ericson or Shabb before the Board began deliberations, and that Ericson actually voted against discharging Kilber.  Based on this record, we conclude Kilber did not establish prejudice from the procedural violations and that Kilber has also failed to establish a “systemic disregard of the law” to warrant relief from the District’s decision to discharge him.

B

[¶27] Kilber contends that the District maintained a “secret” personnel file in part based on Dr. Mary Koopman’s testimony about events which had taken place years earlier and which had not been documented in his personnel file and based on statements by the two school board members that there were other sources of information concerning Kilber that were not made available to him or not in his personnel file.  Kilber contends that, between the hearings, school board member Ericson had visited with the human resources director and obtained documentation “supposedly out of Kilber’s personnel file” which purportedly had not been provided to Kilber.  Kilber contends the “only conclusion that can be reached” is that the District kept a secret file on Kilber containing information only shown to School Board member Ericson and not provided to Kilber upon his request.  The District argues, however, that Kilber’s assertion of a secret personnel file is unavailing because a District is not limited to evidence in a teacher’s personnel file to support reasons to discharge for cause.

[¶28] Indeed, this Court has said that “[i]f a school administrator really keeps a secret personnel file on a teacher that is later used at a nonrenewal hearing, no doubt that use would deny specific rights granted a teacher ” under prior law.  
Borr v. McKenzie Cnty. Sch. Dist. No. 1
, 1997 ND 30, ¶ 18, 560 N.W.2d 213 (quoting trial court’s analysis, however, and noting that “statute prohibiting secret files does not say that everything that is brought to the teacher’s attention should be placed in the teacher’s file, but rather the statute states that anything that is placed in the teacher’s file should be brought to the teacher’s attention, i.e. so that the allegation is not secret” and that “[t]his [was] not a case where the information was secretly put in a file and the teacher given no chance to explain or contradict the evidence”); 
see also
 N.D.C.C. ch. 15.1-17 (addressing teacher personnel files and prohibiting secret files).

[¶29] In this case, however, Kilber has not established the existence of a secret personnel file.  In support of his contention there was a secret file, Kilber relies on Dr. Koopman’s “recollection” of events not documented in the personnel file and information Ericson apparently received from the human resources director which had not been admitted into evidence during the hearing and which was not contained in the personnel file materials he purportedly received from the District.  These assertions without more do not establish the existence of a secret personnel file.  We therefore conclude that Kilber has presented insufficient evidence to establish that the District maintained a secret personnel file on Kilber.  Further, we conclude Kilber failed to establish he suffered prejudice as a result of testimony about the allegations not documented in his personnel file.

C

[¶30] Kilber argues materials were also introduced that were “outside” of the notice of the hearing and the reasons for the discharge.  Specifically, Kilber contends that, while the District had produced evidence during its case-in-chief through testimony of witnesses and several documents to support its case, during cross-examination the District’s attorney asked Kilber about matters which were beyond the scope of direct examination and were not contained within the notice provided to Kilber.  The District contends Kilber failed to preserve an issue regarding the District’s cross-

examination because he did not make a timely objection and failed to request the Board be admonished to not consider the material, thereby waiving his objection to the allegedly prejudicial statements.

[¶31] Again, based on our review of the record, to the extent Kilber has not failed to preserve his issues on appeal by his failure to object, we conclude that Kilber has not established that he was prejudiced by the purported improper cross-examination or material allegedly “outside” of the hearing notice.

V

[¶32] Lastly, Kilber argues that the District conclusion that “[a]ll procedural steps required by law for the Board to consider the dismissal of Kilber for cause have been duly taken” is not in accordance with the law.  Because we conclude that Kilber failed to establish that he suffered harm or was prejudiced as a result of the procedural errors that occurred during the discharge hearing and that, under either N.D.C.C. ch. 28-32 or ch. 28-34, Kilber’s discharge is supported by the record, we conclude that Kilber was not denied a fair hearing.

VI

[¶33] We have considered Kilber’s remaining issues and arguments and conclude they are without merit or unnecessary to our opinion.  The judgment is affirmed.

[¶34] Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.